KAROW and another vs. THE CONTINENTAL INSURANCE COMPANY OF NEW YORK.

*January 10 — February 20, 1883.*

EVIDENCE. *(1) Suicide as evidence of insanity.*
INSURANCE AGAINST FIRE. *(2) Liability for damage caused by act of insured while insane.*

1. The mere fact that a man commits suicide does not raise a presumption of his insanity at the time; but that fact, in connection with other evidence, is pertinent to the issue of insanity, especially where the suicide is immediately preceded by the murder or attempted murder of members of his family and the destruction of his property without any apparent motive or provocation.

2. Where there is nothing in the policy to the contrary an insurer is not released from liability because the property was burned by the assured while insane, nor unless the burning was caused by the voluntary act, assent, procurement, or design of the assured.

APPEAL from the Circuit Court for *Winnebago* County. The case is thus stated by Mr. Justice CASSODAY:

"The plaintiffs are the daughters, only heirs at law, and legal representatives of John Wiskow, who is claimed to have died January 12, 1881. This action is upon two fire insurance policies issued by the defendant to him in his lifetime, upon the buildings constituting his homestead, for the sum of $1,150. It is claimed, and for the purposes of this

case we must regard the facts as established, that at about half-past six o'clock in the evening of January 12, 1881, the assured, John Wiskow, struck and severely injured one of the plaintiffs, then killed his wife, and then set fire to the buildings above mentioned, and then either killed himself or allowed himself to perish in the flames of one of the burning buildings. At the close of the trial, under the charge of the court, the jury returned a special verdict to the effect that John Wiskow was dead, that he set fire to the buildings, and was not insane when he did it. The plaintiffs moved for judgment on the ground that the defendant had waived the defense of the buildings being burned by Wiskow, but the motion was denied and the plaintiffs excepted. Judgment was thereupon entered upon the special verdict in favor of the defendant, from which this appeal is brought."

*Geo. W. Burnell*, for the appellants, to the point that suicide (even where the policy contained a clause to that effect) would not avoid a policy of life insurance when the assured was insane, cited: *Mutual Life Ins. Co. v. Terry*, 15 Wall., 580; *Charter Oak Life Ins. Co. v. Rodel*, 95 U. S., 232; *Conn. Mut. Life Ins. Co. v. Groom*, 86 Pa. St., 92; *Newton v. Ins. Co.*, 76 N. Y., 426; *Insurance Co. v. Moore*, 34 Mich., 41; *Scheffer v. Ins. Co.*, 25 Minn., 534.

*Chas. W. Felker*, for the respondent, contended, *inter alia*, that an insane person is not guilty of a crime, neither is he liable for a tort wherein intent is a necessary ingredient, for the reason that the guilt or wrong lies in the intent. Cooley on Torts, 103. But a lunatic has always been held liable for other torts. Cooley on Torts, 99–102; *Behrens v. McKenzie*, 23 Iowa, 333; *Morse v. Crawford*, 17 Vt., 499; *Bank v. Moore*, 78 Pa. St., 407–412; *Ex parte Leighton*, 14 Mass., 207; Shearman & Redf. on Neg., sec. 57; *Bush v. Pettibone*, 4 N. Y., 300; *Huchting v. Engel*, 17 Wis., 237; *Krom v. Schoonmaker*, 3 Barb., 647; Reeve's Dom. Rel., 258. Decisions on the insanity of the assured in life insurance policies

have no application to fire insurance. A fire insurance policy is a contract for indemnity. The risk is that the insurer shall pay in case the insured is damaged by fire. *Dalby v. Assurance Co.*, 28 Eng. L. & Eq., 312; Wood on Ins., 4; Bouvier's Law Dict., tit. "Indemnity;" *Miller v. Ins. Co.*, 1 Handy (Super. Ct. Cin.), 208; 1 Am. L. Cas., 806. If the insured cause the damage by his own act, although the disease called insanity had deprived the mind of felonious intent, yet the insurer is not liable because the intent in such cases is immaterial. A life insurance policy is not a contract for indemnity, but an executory agreement to pay a sum certain at death. The premium is based upon the age of the insured and carefully prepared estimates of the duration of life. *Conn. Mut. Life Ins. Co. v. Schaefer*, 94 U. S., 457; *Dalby v. Assurance Co., supra; St. John v. Ins. Co.*, 13 N. Y., 31; *Robert v. Ins. Co.*, 2 Disney, 106; Anson on Con., 172; 1 Am. L. Cas., 861. In life insurance policies, failure to pay the yearly premium by reason of the insanity of the insured causes forfeiture. *Wheeler v. Conn. Life Ins. Co.*, 82 N. Y., 543. In a legal sense damages do not arise by the death of a human being. Insanity is a disease, and the life insurer, unless there is a clause in the policy to the contrary, takes the risk of that as well as of all other diseases.

CASSODAY, J. Assuming that the defendant called for proofs of loss, yet we do not think such call was made with such knowledge of the facts as to waive the defense alleged that the assured burned his own buildings. In submitting the question of insanity, the court, in effect, charged the jury that they must look outside of the commission of the act of which the assured was charged, and could only find him insane from other and independent testimony in no way connected or associated with the crime. Assuming that the plaintiffs had the right to have the question of insanity submitted to the jury, then the mental condition of Wiskow at

the time of the burning was the material subject of inquiry. Certainly his acts, being of the character indicated, tended to show what his mental condition was at that time. It is undoubtedly the law that where the only evidence tending to prove insanity is the commission of a given crime, such act of itself is not sufficient to establish insanity. The mere fact that a man commits suicide does not even raise a presumption of insanity at the time. It is, however, a fact which, in connection with other evidence, becomes very pertinent to the issue. Especially is this so where the suicide is immediately preceded by the murder or attempted murder of members of the suicide's family, and the destruction of his property without any apparent motive or even provocation. The rule is elementary, and must exist from the very nature of the question to be determined.

The learned counsel for the defendant virtually concedes the rule. For this manifest error in the charge, therefore, the case must be reversed, unless the determination of the question of insanity was immaterial, as urged by counsel for the defendant. He claims that the burning of the buildings by the assured relieved the company from all liability, regardless of the question whether he was at the time sane or insane, and such seems to have been the opinion of the court during a portion of the trial. The question is important, and the principal one discussed upon the argument. Counsel on both sides concede their inability to find any adjudicated case directly in point. Upon the part of the plaintiffs it is urged that the case is the same in principle as the liability of a life insurance company, where the assured has committed suicide; and several cases are cited which hold, in effect, that if the assured was insane at the time of the suicide, then the company is liable, otherwise not.

On the other hand, it is claimed upon the part of the defense that those cases have no application to fire insurance; that the two classes of contracts are essentially different; that a policy

of fire insurance is a contract of indemnity,— a contract for compensation for damages actually sustained; whereas, a policy of life insurance is a contract to pay a certain sum of money upon the death of a person named, which is sure to happen, and that such payment is to be made, regardless of the value or worthlessness of the life insured. Having thus distinguished the two classes of cases, the learned counsel contends that, while an insane person cannot be guilty of a crime, nor liable for a tort wherein the *intent* is a necessary ingredient, yet that a lunatic has always been held liable for other torts resulting in damage.    In support of this, counsel cites several cases, and argues from them that if a lunatic burns the buildings of A., he is liable to A. for the amount of the actual damages sustained; and that, since this is so, it must follow that a lunatic cannot burn his own buildings upon which he has previously obtained an insurance, and then turn around and recover of the insurer the damages he has sustained by reason of his own act.

The argument is plausible, and deserves very careful consideration, especially in the absence of any direct authority upon the question involved.    In order to appreciate its force, it may be well to consider the precise ground upon which such liability is predicated.    *Krom v. Schoonmaker*, 3 Barb., 650, was an action for false imprisonment on void process issued by the defendant when a lunatic, and Judge HARRIS stated the rule thus: " He [a lunatic] is not a free agent, capable of intelligent, voluntary action, and therefore is incapable of a guilty intent, which is the very essence of crime; but a civil action, to recover damages for an injury, may be maintained against him, *because the intent with which the act is done is not material.  .  .  .*    Ordinarily, in an action for a personal injury, the amount of damages is, at least to a considerable extent, governed by the motive which influenced the party in committing the act.  .  .  .    But in respect to the lunatic, *as he has properly no will,* it follows that the

Karow and another vs. The Continental Ins. Co. of New York.

only proper measure of damages in an action against him for a wrong, is the mere compensation of the party injured."

In *Morse v. Crawford*, 17 Vt., 499, the defendant, while insane, killed the plaintiff's ox, and in an action against him therefor the court said: "It is a common principle that a lunatic is liable for any tort which he may commit, though he is not punishable criminally. When one receives an injury from the act of another, this is a trespass, though done by mistake or *without design*. Consequently, no reason can be assigned why a lunatic should not be held liable." To the same effect, *Behrens v. McKenzie*, 23 Iowa, 333. In *Beals v. See*, 10 Pa. St., 61, Chief Justice GIBSON said: "As an insane man is civilly liable for his torts, he is liable to bear the consequences of his infirmity, as he is liable to bear his misfortunes, on the principle that where a loss must be borne by one of two innocent persons, it shall be borne by him who occasioned it." This was quoted approvingly in *Lancaster v. Moore*, 78 Pa. St., 413, and is substantially the ground of liability as stated in Cooley on Torts, 99–103.

Thus the liability is made in no way dependent upon intent or design to commit the act complained of, but is based upon the theory that the lunatic has no will, hence can form no design nor have any intent. It is solely upon the ground that where a loss must fall upon one of two persons equally innocent, it must be borne by the one who caused it. To relieve the defendant from liability upon the strength of the above authorities, therefore, we must go to the extent of holding that there can be no recovery in such case if the destruction of the property was in consequence of any act of the assured, unmoved and unprompted by any intent or design, and when such assured was, in legal contemplation, without any will of his own, and hence incapable of forming any design or having any intent to destroy. Is such the law of fire insurance? It is conceded that there is no express stipulation in the policy relieving the company from liability

in such case. But it is a maxim of the insurance law of all commercial nations that the assured cannot recover for loss produced by his own wrongful act. *Thompson v. Hopper*, 6 El. & Bl., 191.

This brings us to the question, whether he can recover if he happens to set fire to the building without any intent or design to injure any one. In the absence of fraud or design, there can be no question but that a fire insurance company is not relieved from liability on its policy by reason of loss by fire through the negligence of the assured or his servants. *Dobson v. Sotheby*, 1 Moody & M., 90; *Busk v. The Royal Exchange*, 2 Barn. & Ald., 73; *Walker v. Maitland*, 5 Barn. & Ald., 171; *Shaw v. Robberds*, 6 Adol. & E., 75; *Catlin v. Ins. Co.*, 1 Sumn., 434; *Columbia Ins. Co. v. Lawrence*, 10 Pet., 507; *Waters v. Ins. Co.*, 11 Pet., 213; *St. Louis Ins. Co. v. Glasgow*, 8 Mo., 713; *Nelson v. Ins. Co.*, 8 Cush., 477; *Gates v. Ins. Co.*, 5 N. Y., 469; *Matthews v. Ins. Co.*, 11 N. Y., 14; *Huckins v. Ins. Co.*, 11 Foster, 247; *Johnson v. Ins. Co.*, 4 Allen, 388; *Mickey v. Ins. Co.*, 35 Iowa, 174; *Cumberland v. Douglas*, 58 Pa. St., 423; *National Ins. Co. v. Webster*, 83 Ill., 470; *Gove v. Ins. Co.*, 48 N. H., 41.

In *Dobson v. Sotheby, supra,* Lord TENTERDEN, C. J., said that " one of the great objects of insuring is security against the negligence of servants and workmen." In *Shaw v. Robberds, supra,* Lord DENMAN, C. J., reiterated the same doctrine, and added: "But it is argued that there is a distinction between the negligence of servants or strangers and that of the assured himself. We do not see any ground for such distinction; and are of opinion that, in the absence of all fraud, the proximate cause of the loss only is to be looked to." Page 84.

In *Gates v. Ins. Co.*, *supra,* the opinion of the court states that " there can be no doubt that one of the objects of insurance against fire is to protect the insured from loss, as well against his own negligence as that of his servants and

others, and therefore the simple fact of negligence in either,. however great in degree, has never been held to be a defense in such policy." Page 478.

In *Mickey v. Ins. Co.*, *supra*, the stove-pipe passed from below through the floor of the second story. The pipe in the second story was removed and a bed placed over the hole by the assured's wife, with the intention of removing the stove below, but which was not done. Subsequently,. the weather becoming colder, she made a fire in the stove,. without thinking of the removed pipe and the bed above.. The result was that the house was consumed, and the company was held liable.

In *Cumberland v. Douglas*, *supra*, Mr. Justice Story said: "A fire policy is a protection against fire caused by the assured's own negligence, unless the negligence amounts to fraud."

In *Breasted v. Farmers' L. & T. Co.*, 8 N. Y., 306, it was, as here, urged in an action on a life insurance policy, "that because a person *non compos mentis* is liable *civiliter* for torts committed while in a state of insanity, therefore insanity has no effect to qualify this exception [if he shall die by his own hand] in the policy. That conclusion is not a legitimate deduction from the premises. . . . A death by accident, and a death by the party's own hand, when deprived of reason, stand on principle in the same category. In both cases the act is done without a controlling mind."

Of course, negligence involves a want of care in one who ought to bestow care. It is an omission of duty. But the law imposes no duty — no obligation of care — upon one who has no control over his mental faculties, and hence no control over his physical action. Being under no obligation of care, and under no restraint of duty, and incapable of exercising either, it would be inapt, if not inaccurate, to say that by his omission an insane person was guilty of negligence. Since burning through the negligence of an insured

who is sane does not relieve the company from liability, for a much stronger reason the same act by one who is incapable of care would not. But while the negligent burning by the assured of his own property does not relieve the company from liability, yet the negligent burning of another person's property would subject him to damages on the ground of negligence. So, while the burning of his own property by an assured under no restraint of duty and incapable of care, and without any intent or design, does not relieve the company from liability, yet the same act of burning another's property might subject such person to damages therefor, not on the ground of negligence, as that word is usually understood, but, in the language of Chief Justice GIBSON, *supra*, " on the principle that where a loss must be borne by one of two *innocent* persons, it should be borne by him who occasioned it."

For the reasons given, it follows as a logical sequence that the non-liability of a fire insurance company cannot be predicated upon the fact that the act of burning by the assured, if done to the property of another instead of his own, would have made him liable in damages. The authorities holding a lunatic liable for the actual damages occasioned by his torts, therefore, furnish no ground for relieving the defendant from liability in the case before us. The act of burning the property of another necessarily destroys the property burned, and injures the owner to the extent of its value. But the act of burning one's own property does not necessarily injure an insurance company. Whether it does or not depends upon whether the company has, for the time being, assumed the risk of such burning. It is because the company, for a consideration paid, has, for the time being, assumed the risk of burning and hence relieved the owner from such risk, that the liability continues, even where the burning is by the assured's own negligence, or that of his agents or servants. Such policy covers all risks of loss from fire not ex-

cepted therefrom, nor affected by the intent, design, or procurement of the assured. Such being the risk which the defendant here by its contract expressly assumed, it cannot be relieved therefrom merely because the assured burned the property, if it is made to appear that at the time of such burning the assured was incapable of forming a design or intention to injure. ✓

Counsel for the defendant concedes that if the assured was insane at the time, then he could not be guilty of a crime, nor liable for a tort wherein the intent is a necessary ingredient. The authorities cited by him fully support this concession, and hold that a lunatic "is not a free agent, capable of intelligent, voluntary action, and therefore is incapable of a guilty intent." The same authorities substantially hold that a lunatic has, properly, no will, but acts without design, and is influenced by no motive. Can the act of such a person, even in the burning of his own property, relieve an insurance company from a risk which he has paid it for assuming?

In *Gove v. Ins. Co.*, *supra*, the wife of the assured, while insane and alone in the house, burned his buildings, and it was there held that " the defendants will be liable for the loss, unless they can show actual design or such a degree of negligence and carelessness on the part of the husband as will evince a corrupt design or a fraudulent purpose on his part." After citing authorities indirectly bearing upon the question, the learned judge, giving the opinion of the court in that case, said: " It appears to us that it would be a misnomer of terms that she, being admitted to be in this state [insane], could so far control her reasoning powers as to be able to plan or design the act done by her beforehand, in such a manner as to render herself responsible as a moral agent. The word ' insane ' implies unsoundness or derangement of mind or intellect, not a mere temporary or slight delirium which might be occasioned by fever or accident; and we can-

not attach moral accountability to a wrongful act admitted to be done by an insane person."

The court then considered the question whether the company was relieved by the husband's negligence in leaving his wife alone in the house while in the condition stated, and concluded that it was not. Applying to that case the rule in respect to negligence sanctioned by Lord DENMAN, *supra*, that there is no distinction between the act of the assured and his servants, and assuming that a wife left by her husband alone and in charge of his house is, as to its care and custody, the servant if not the agent of the husband, and it follows that if such burning by her while insane will not relieve the company, then neither would such burning by him while insane relieve the company. Of course, such act of burning by such insane wife was not, under the authorities cited, a criminal act, but at most a tort committed without any design or intent to injure, and by one incapable of controlling her reasoning powers, and hence incapable of planning or designing such act in advance, or comprehending its consequences, especially to the insurance company. Such burning by such insane wife, being a mere tort of the character indicated, was, therefore, imputable to the husband, for it is well settled that the husband is liable for the torts of his wife (*Head v. Briscoe*, 5 Car. & P., 484; *Heckle v. Lurvey*, 101 Mass., 344; *Fowler v. Chichester*, 26 Ohio St., 9; *Ball v. Bennett*, 21 Ind., 427; *Brazil v. Moran*, 8 Minn., 236; *Hildreth v. Camp*, 41 N. J. Law, 306); and he may be arrested therefor (*Solomon v. Wass*, 2 Hilton, 179; *Schaus v. Putscher*, 25 How. Pr., 463).

Such being the law, it is evident that had such insane wife burned the house of a neighbor instead of the house of her husband, the husband would, on the principle of the authorities cited, have been liable for the tort; but having burned her husband's house, and such risk of burning having, for value received, been expressly assumed by the insurance com-

Karow and another vs. The Continental Ins. Co. of New York.

pany for the very purpose of relieving the assured therefrom, it would seem that the case was rightly decided. Whether the criminal act of intentional burning by a sane wife, without the knowledge, privity, or consent of the husband, would relieve the company from liability to him, need not be here considered.

In the recent case of the *Midland Ins. Co. v. Smith*, L. R., 6 Q. B., 561; *S. C.*, 29 English (Moak's), 710, the company sought to cancel the policy held by the husband for such act of criminal burning by the wife, but a demurrer to the bill was sustained. It was there observed that "the loss or damage caused by the wrongful act of the wife either is or is not a loss which the company have agreed to indemnify the husband against. Now, if it is such a loss, an attempt by the company to enforce against the husband a return indemnity or reimbursement is at variance with the very substance of their undertaking to indemnify him. If, on the other hand, the loss, by reason of its having arisen from the act of the wife, is not within the risks and losses covered by the policy, then this action is as wholly misconceived, unnecessary, and unfounded as if the loss had been caused by any other risk not covered by the policy." The court continued, and gave opinion upon the "real and substantial contention on the part of the insurance company," although conceding that it did not and could not arise in the case, as follows: "I have no hesitation in saying that it appears to me to be upon principle perfectly clear and free from doubt that such a loss would be covered by an ordinary policy against loss caused by fire. Under such a policy the company would be liable for every loss caused by fire, unless the fire itself were caused and procured by the wilful act of the assured himself, or some one acting with his privity and consent. In order to escape from responsibility for such a loss as the present, the company ought to introduce into their policy an express exception."

The substance of the decisions seems to be that a fire policy covers all risks of loss or damage by fire, save only such as are excepted by the terms of the policy and such as are caused by the voluntary act, assent, procurement, or design of the assured himself. In this respect the law of fire insurance seems to be in harmony with the law of life insurance.

In *Horn v. Life Ins. Co.*, 7 Jurist (N. S.), 673, Vice-Chancellor Wood said: "It appears to me clear that where there is no express provision in the policy that in the event of the insured dying by his own hand the policy shall become void, that policy is not vacated by the circumstance of his having died by his own hand while in a state of temporary insanity." This seems to be the acknowledged law of life insurance. May on Ins., § 323. Such being the law of life insurance, a clause is usually inserted in the policy to the effect that the insurer will not be liable in case the insured should "die by suicide, felonious or otherwise, sane or insane." But even then these words are only held to include cases of intentional self-destruction, and not unintentional or accidental death, though brought about by acts of the deceased, involving negligence or carelessness. *Pierce v. Life Ins. Co.*, 34 Wis., 389.

In *Knickerbocker Life Ins. Co. v. Peters*, 42 Md., 414, it was held that suicide by the insured while "in a fit of insanity which overpowered his consciousness, reason, and will," did not come within the clause exempting the company in case the assured should "die by his own hand or act." See, also, *Penfold v. Life Ins. Co.*, 85 N. Y., 317, and cases cited by counsel for the plaintiff. But, as already suggested, in the policy before us there is no exemption from liability in case the assured should burn the property feloniously or other wise, sane or insane, nor anything of that nature.

For the reasons given we must hold that where, as here, there is nothing in the policy to the contrary, the insurance company is not relieved from liability because the property

was burned by the assured while in a state of insanity, nor unless the burning was caused by the voluntary act, assent, procurement, or design of the assured. What has already been said in regard to the charge of the court to the jury renders it unnecessary to apply the principle there suggested to the alleged error in excluding the expert testimony, as the same ruling is not likely to be repeated.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.