Pool, Respondent, vs. Milwaukee Mechanics' Insurance Company, Appellant.

*November 13 — November 26, 1895.*

*Insurance against fire: Additional insurance: Implied consent: Increase of hazard: Negligence of insured: Court and jury.*

1. Although, by the terms of an insurance policy, it was to become void, unless otherwise provided by agreement indorsed thereon or added thereto, in case the insured should thereafter procure other insurance on the property, implied authority to procure additional insurance was given by a written statement, signed by the company's agent, bearing even date with the policy, and attached thereto as a part thereof, to the effect that if, at the time of a fire, the whole amount of insurance on the property should be less than eighty per cent. of the actual cash value thereof the company should be liable for only such proportion of the loss or damage as the amount insured by the policy should bear to said eighty per cent. of said actual cash value,— especially where all the additional insurance was procured by the same agent who issued the policy in question.

2. Whether the use by the insured of inflammable sulphur candles to fumigate his store building was an increase of the hazard by means within his control or knowledge was a question of fact to be determined by the jury from the evidence; and the refusal of the trial court to submit to the jury the question whether the hazard was increased by the use of such fumigators was error, although it did submit the question whether the fire was caused by the fault or negligence of the insured,— such latter question not being equivalent to the former one.

3. A fire insurance company is not relieved from liability on its policy by the fact that the loss occurred through the mere negligence of the insured or his servants.

4. In an action upon a policy which provided that the company should not be held to have waived any provision or condition of the pol-

icy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to an appraisal of the loss or any examination of the insured therein provided for, the question whether a forfeiture had been waived by other acts not so provided for, whereby it had put the insured to expense or disadvantage, is *held,* upon the evidence, a question of fact for the jury.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Reversed.*

On February 14, 1894, in consideration of $46.50, then paid by the plaintiff to the defendant, the defendant duly made, executed, and delivered to the plaintiff its policy of insurance, bearing date on that day, wherein and whereby it insured the plaintiff against loss or damage by fire in the sum of $3,000, on his stock of dry goods, notions, carpets, cloaks, furnishing goods, and such other merchandise as is usually kept for sale in retail dry-goods stores in the place described. Said policy contained, among other things, the following provisions, to wit:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy, . . . or if the hazard be increased by any means within the control or knowledge of the insured. . . .

"This policy may by a renewal be continued under the original stipulations, in consideration of premium for the renewal term, provided that any increase of hazard must be made known to this company at the time of renewal, or this policy shall be void. . . .

"This company shall not be held to have waived any provision or condition of the policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal, or to any examination herein provided for. . . .

"This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property; and the extent of the application of the insurance under this policy, or of the contribution to be made by this company, in case of loss, may be provided for by agreement or condition written hereon or attached or appended hereto. . . .

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist, or be claimed by the insured, unless so written or attached.

"The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath, by any person named by this company, and subscribe the same, and, as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made.

"In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers,— the assured and this company each selecting one,— and the two so chosen shall first select a competent and disinterested umpire. The appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss. The parties thereto shall pay the appraiser respectively selected by them, and shall bear equally the expenses of the appraisal and umpire.

"This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal, or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required."

On April 29, 1894, the said property, so located and so insured by said policy, was damaged and injured by fire to the amount of $51,863.69. The plaintiff immediately gave due notice to the defendant of said fire, loss, and damage, and on June 7, 1894, duly furnished and rendered proofs of loss to the defendant, as provided and required by said policy. Said proofs contained, among other things, statements to the effect that said fire did not originate by any act, design, or procurement on the part of the assured, or in consequence of any fraud or evil practice done or suffered by him, and that nothing had been done by or with his privity or consent to violate the conditions of the policy or render the same void; and further contained this clause: "It is expressly stipulated that there has been no waiver of

any of the rights or defenses of this company by the furnishing of this 'proof of loss' blank to the assured, or making up proofs by an adjuster or any agent of the company or companies named herein, or in any other way whatever."

On August 28, 1895, the plaintiff commenced this action to recover the amount of said policy. The complaint alleged, in substance and effect, the facts stated. The defendant answered said complaint, and therein admitted the incorporation of the defendant, the making, executing, and delivering of said policy, and that the plaintiff was the owner of the property described therein, but alleged that it had no knowledge or information sufficient to form a belief as to the character, condition, amount, or value of said property. It admitted the destruction by fire of a portion of the property mentioned, and the notice of the fire, and the alleged proofs of loss, and set out certain portions of the policy above copied, and alleged, in effect, that April 24, 1894, the plaintiff increased the hazard of said risk by placing, in a wanton, reckless, and grossly negligent manner, in divers parts of the premises occupied by the goods described, certain candles or fumigators, of a dangerous and unsafe construction and composition, and by igniting, or causing the same to be ignited, and then left the same burning until the fire, without any person in charge or control of the same, and that said candles and fumigators caused said fire.

On May 10, 1895, the plaintiff and this defendant and the Lancashire Insurance Company and twenty-two other insurance companies entered into an agreement, of which the following is a copy, to wit: "Ashland, May 10, 1895. It is hereby agreed, by and between *F. J. Pool* and the various insurance companies which may hereafter sign this agreement, that ten thousand dollars ($10,000) is accepted and agreed upon as the cash value of the goods saved from the fire of the said *F. J. Pool* of April 29, 1894, and that the said ten thousand dollars ($10,000) is to be deducted from

the amount of the sound cash value of the stock of the said
*F. J. Pool* at the time of said fire, when the same is ascertained."

At the close of the trial the circuit court directed the jury
to return a verdict to the effect (1) that the plaintiff and defendant entered into the contract of insurance, for the consideration mentioned in the complaint, upon the personal
property therein mentioned, against loss by fire, for the sum
of $3,000; (2) that a large portion of said personal property
was destroyed by fire April 29, 1894, during the continuance
of said contract; (3) that the plaintiff did give the defendant notice of said fire, and furnished and rendered proofs of
loss and damage thereby, June 7, 1894, within the time required by said policy.   The jury also returned a special verdict to the effect (4) that said fire was not caused by the
fault or want of ordinary care on the part of the plaintiff;
(5) that the total loss or damage to the plaintiff's said personal property by said fire was $51,863.69.   Thereupon the
court ordered judgment to be entered upon said verdict in
favor of the plaintiff for $3,086.49 damages, and costs to be
taxed.   From the judgment entered accordingly the defendant appeals.

For the appellant there were briefs by *Mylrea, Marchetti
& Bird*, and oral argument by *W. H. Mylrea*.   They argued, among other things, that the use of the fumigators in
the manner shown by the evidence was a material and great
increase in the hazard.   Were there any question upon that
point, the uncontradicted testimony of the insurance experts
would be conclusive.   *First Cong. Church v. Holyoke Mut.
F. Ins. Co.* 158 Mass. 475; *Cornish v. Farm B. Ins. Co.* 74
N. Y. 295, 298; *White v. Phœnix Ins. Co.* 83 Me. 279; *Mc-
Lanahan v. Universal Ins. Co.* 1 Pet. 171, 188; *Hobby v.
Dana*, 17 Barb. 111; *Merriam v. Middlesex Mut. F. Ins. Co.*
21 Pick. 162; *Leitch v. Atlantic Mut. Ins. Co.* 66 N. Y. 100,
108; *Davis v. Western H. Ins. Co.* 81 Iowa, 496; *Francis v.*

*Sommerville Mut. Ins. Co.* 25 N. J. Law, 78, 84; *Kyte v. Commercial U. Ass. Co.* 149 Mass. 116; *Long v. Beeber,* 106 Pa. St. 466; *Hoffecker v. New Castle Co. Mut. Ins. Co.* 5 Houston (Del.), 101, 118; 1 May, Ins. § 218; 1 Wood, Ins. 579, 581, 594; *Mack v. Rochester G. Ins. Co.* 106 N. Y. 560; *Imperial F. Ins. Co. v. Coos Co.* 151 U. S. 452; *Daniels v. Equitable F. Ins. Co.* 48 Conn. 105; *S. C.* 50 id. 551; *Appleby v. Astor F. Ins. Co.* 54 N. Y. 260; *Murdock v. Chenango Co. M. Ins. Co.* 2 id. 210; *School Dist. No. 116 v. German Ins. Co.* 64 N. W. Rep. 527. The use of the fumigators cannot be claimed to have been one of the ordinary uses of the property, such as would be contemplated at the time the insurance was taken. If such claim had been made that question would have been for the jury to determine. *First Cong. Church v. Holyoke Ins. Co.* 158 Mass. 475; *Washington Mut. Ins. Co. v. Merchants' & M. M. Ins. Co.* 5 Ohio St. 450. The question "Did the fumigators as used increase the hazard?" should have been included in the special verdict. *Kercher v. Milwaukee M. Mut. Ins. Co.* 74 Wis. 470; *Williams v. People's F. Ins. Co.* 57 N. Y. 274; *Grand Rapids H. Co. v. Am. F. Ins. Co.* 93 Mich. 396; *North British & M. Ins. Co. v. Steiger,* 124 Ill. 81; *Germania F. Ins. Co. v. Deckard,* 3 Ind. App. 361; *Crane v. City Ins. Co.* 3 Fed. Rep. 558; *Rice v. Tower,* 1 Gray, 426; *Harris v. Protection Ins. Co.* Wright (Ohio), 548; *Jones v. Fireman's F. Ins. Co.* 51 N. Y. 318; *Hardman v. Fireman's Ins. Co.* 20 Fed. Rep. 594; *Long v. Beeber,* 106 Pa. St. 466. The other insurance without the consent of the company avoids the policy. *Gillett v. Liverpool & L. & G. Ins. Co.* 73 Wis. 203; *Bonneville v Western Ass. Co.* 68 id. 298. This policy provides that such consent must be indorsed thereon in writing, and no other consent can therefore be claimed. *Bourgeois v. N. W. Nat. Ins. Co.* 86 Wis. 606. The percentage co-insurance clause attached to the policy does not imply consent to other insurance. It simply makes provision which is to become applicable in

case other insurance be taken. *New Orleans Ins. Asso. v. Griffin*, 66 Tex. 232. Any one of several other provisions in the standard policy is just as much a consent to other insurance as is the percentage co-insurance clause. Each one of them is a provision in general terms intended to become applicable in case other insurance is taken. This court, however, has held under this standard policy, where there was other insurance and no specific consent indorsed upon the policy, that the policy was void and the insurance could not be recovered. *Wilcox v. Continental Ins. Co.* 85 Wis. 193. The insurer has a right to insist that the provisions of the policy be observed before it is held to have given its consent. Mere expressions of willingness or readiness to give consent are not sufficient. *Hutchinson v. Western Ins. Co.* 21 Mo. 97; *Allemania Ins. Co. v. Herd*, 37 Mich. 11; *Forbes v. Agawam Mut. F. Ins. Co.* 9 Cush. 470.

*W. L. Windom* and *Gabe Bouck*, for the respondent, contended, *inter alia*, that a change in order to be an " increase of hazard" must be some permanent change in the condition of the property insured. *Geo. Home Ins. Co. v. Kennier's Adm'x*, 28 Grat. 88; *Leggett v. Ætna Ins. Co.* 10 Rich. 202; *Billings v. Tolland Co. M. F. Ins. Co.* 20 Conn. 139; *Comm. v. Hide & L. Ins. Co.* 112 Mass. 136; *Whitney v. Black River Ins. Co.* 72 N. Y. 117; *German Ins. Co. v. Hart*, 16 Ky. L. Rep. 344; *LaForce v. Williams City F. Ins. Co.* 43 Mo. App. 518; *Westchester F. Ins. Co. v. Foster*, 90 Ill. 121; *Shaw v. Robberds*, 6 Adol. & El. 75; *New York v. Hamilton Ins. Co.* 39 N. Y. 45; *Gates v. Madison Co. Mut. Ins. Co.* 5 id. 469; *State Ins. Co. v. Hughes*, 10 Lea, 461; *Au Sable L. Co. v. Detroit M. M. F. Ins. Co.* 89 Mich. 407; *Herrman v. Merchants' Ins. Co.* 81 N. Y. 184; *Williams v. N. E. Mut. F. Ins. Co.* 31 Me. 219; *Dobson v. Sotheby*, 22 Eng. C. L. 260; *First Cong. Church v. Holyoke Ins. Co.* 158 Mass. 475; *Johnson v. Berkshire M. F. Ins. Co.* 4 Allen, 388. The eighty per cent. clause not only contemplates but gives permission

Pool vs. Milwaukee Mechanics' Ins. Co.

for additional insurance to the amount of eighty per cent. of the value.

CASSODAY, C. J. 1. Counsel contend that the court should have directed a verdict in favor of the defendant, by reason of other insurance having been put upon the property without the written consent of the defendant. As indicated in the foregoing statement, by certain clauses of the policy the same was to be void if the insured thereafter procured any other contract of insurance, unless otherwise provided by agreement indorsed thereon or added thereto, and it was further provided that the defendant was not to be liable for a greater proportion of any loss than the amount of the policy herein should bear to the whole insurance upon the property; that the policy was made and accepted subject to the stipulations and conditions therein, " together with such other provisions, agreements, or conditions " as might be indorsed thereon or added thereto; that the provisions or conditions of the policy could only be waived by agreement in writing indorsed thereon or added thereto; and that " any privilege or permission affecting the insurance under this policy " must be so written thereon or attached thereto. There was a written statement, bearing even date with the policy and attached thereto as forming a part thereof, signed by the defendant's agent, to the effect that " if, at the time of the fire, the whole amount of insurance on the property covered by this policy be less than eighty per cent. of the actual cash value thereof," then the defendant should, " in case of loss or damage, be liable for only such proportion of such loss or damage as the amount insured by this policy shall bear to the said eighty per cent. of the actual cash value of such property." While this writing so attached does not expressly authorize such additional insurance without such consent, yet it does by necessary implication authorize the same and make it an object for the plaintiff to

take additional insurance until the eighty per cent. of the actual cash value of the property should be obtained; and in case it should be obtained, as it in fact was, then the defendant was, in case of total loss, to pay the full face of the policy. Especially should this be so construed, since the defendant's agent in making this insurance contract himself placed, or procured the placing of, the whole of such additional insurance, to the amount in all, including this policy, of $50,000, and the loss or damage, as found by the jury, was more than $50,000. We must hold that the policy was not void by reason of such additional insurance.

2. Counsel contend that the court should have directed a verdict in favor of the defendant, for the reason that the plaintiff increased the hazard by means within his knowledge and control, contrary to a provision of the policy quoted in the statement; that is to say, by using in his store certain inflammable sulphur candles, known as the "Johnson Fumigators," from which the fire originated. There is no claim that, after the making of the contract of insurance, there was any change in the condition or locality of any of the property insured. There seems to have been a necessity of fumigating the plaintiff's store and the goods contained therein and covered by the insurance. The fumigators employed seem to have been adapted to that end. The only ground for controversy in respect to them, it would seem, is as to whether their use increased the hazard by means within the control or knowledge of the plaintiff, within the meaning of the policy. That was necessarily a question of fact, to be determined by the jury from the evidence. *Copp v. German Am. Ins. Co.* 51 Wis. 637; *Spensley v. Lancashire Ins. Co.* 54 Wis. 433; *Kircher v. Milwaukee M. M. Ins. Co.* 74 Wis. 470. The trial court expressly refused to submit to the jury these questions: "Did the use of fumigators by plaintiff, as used, increase the hazard? Was such use the proximate cause of the fire?" The first of these questions

Pool vs. Milwaukee Mechanics' Ins. Co.

or its equivalent should, as we think, have been submitted, and such refusal to submit them was error. We do not think the fourth question submitted was equivalent to such questions or either of them. It was this: "Was said fire caused by the fault or want of ordinary care on the part of the plaintiff?" This merely submitted to the jury the question of the plaintiff's negligence or fault. Upon that question the court charged the jury to the effect that the plaintiff was only required to use ordinary care, or such care as men of ordinary care ordinarily use,— not extraordinary care and prudence; that the burden of proof rested on the defendant to show, by a preponderance of evidence, that the plaintiff did not use ordinary care. Counsel for the plaintiff is undoubtedly right in claiming that the mere negligence of the assured does not avoid a policy. "In the absence of fraud or design, there can be no question but that a fire insurance company is not relieved from liability on its policy by reason of loss by fire through the negligence of the assured or his servants." *Karow v. Continental Ins. Co.* 57 Wis. 62, 46 Am. Rep. 20, and cases there cited. Thus it appears that the principal question submitted to the jury was immaterial, and that the real question in controversy, and litigated, was not submitted to the jury in any form, unless the word "fault" in the question may be said to have covered it. Assuming that it did, still the verdict would be defective, since the question was in the alternative,—"fault or want of ordinary care;" and hence the mere negative answer of the jury leaves it impossible to tell whether the jury found the plaintiff free from any "want of ordinary care" or some other "fault." The plaintiff accepted the policy with the condition that it should be void if he increased the hazard by any means within his control or knowledge. That was the contract, and the question whether he did so increase the hazard was a question of fact for the jury.

3. Counsel contend, in effect, that, even if the policy was

forfeited by reason of such increase of hazard, yet that the defendant waived such forfeiture by reason of its adjuster, with full knowledge of the use of such fumigators and the circumstances of the fire, having ordered the goods saved from the fire to be moved to a place of safety and an inventory thereof taken; and, after such inventory was partially taken, at an expense to the plaintiff of about $200, the defendant's adjuster and the adjusters of the other companies represented in the loss sold the goods so saved to the plaintiff for $10,000, and on May 10, 1895, it was agreed in writing, by and between the plaintiff and such other companies, that $10,000 was accepted and agreed upon as the cash value of the goods saved, and that the same should be deducted from the amount of the sound cash value of said stock at the time of the fire, when the same should be ascertained. As indicated in the foregoing statement, the policy required the plaintiff, as often as requested, to exhibit to the defendant all that remained of the property, and to submit to an examination under oath, and to produce books, bills, invoices, etc., and, in case of disagreement as to the amount of the loss, to have the same appraised as therein prescribed; and that the defendant should not be held to have waived any provision or condition of the policy, or any forfeiture thereof, by reason of any requirement, act, or proceeding on its part relating to such appraisal or examination. Of course, the defendant was at liberty to do all the things which, by the terms of the policy, it was expressly authorized to do without such waiver. Whether, in the instant case, it did more and, inconsistent with the terms of the policy and a defense on the ground of such forfeiture, put the plaintiff to expense or disadvantage, was, under the evidence, a question of fact for the jury, and not of law. As there must be a new trial, we deem it unnecessary to say more.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.