FIRST NATIONAL BANK OF CRANDON, Respondent, vs. UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant.

*September 21—October 8, 1912.*

*Fidelity insurance: Indemnity bond: Construction: Exhausting remedy against others: "Knowledge" of the employer: Pleading: Defenses: Representations in application: Negligence: Bad faith: Findings of fact: Banks and banking: "Kiting" checks.*

1. An indemnity bond issued by a surety company insuring a bank against loss through dishonesty of employees, providing that the employer might at any time transfer an employee from one position to another without notice to the company, was not affected by the promotion, without notice to the company, of the assistant cashier to be cashier, especially where such change was one in name only and did not alter the character of the work done by such employee.

2. An indemnity bond by which a surety company agrees to pay to the employer the amount of any loss he shall sustain "through the dishonesty . . . or through any act of omission or commission of any of the employees, done or omitted in bad faith," and which provides for prompt notice of any loss, for the furnishing of proof thereof within six months, and that no action shall be maintained on the bond unless commenced within one year from the time of making claim for the loss, is essentially an insurance contract guarantying payment, and is not a mere guaranty of collection upon which the employer can recover only after exhausting his remedies against those primarily liable.

3. A provision in such a bond that the employer shall notify the surety company of certain facts—such as that an employee is

dishonest or has acted in bad faith—if the same shall "come to the knowledge of the employer," is construed to mean *actual* knowledge, and not mere constructive notice. It did not, in this case, require a bank to notify the company of facts of which it had no actual knowledge, but of which it might have known had its officers made a critical examination of its books from time to time.

4. Where an indemnity bond insuring a bank against loss through dishonesty of its employees did not require examinations of the books of the bank to be made, representations in the application for the bond that the bank would be examined periodically by its officers and directors should, in order to be available as a defense to an action on the bond, be pleaded.

5. Mere negligence in respect to such examinations on the part of the officers or directors of the bank, resulting in a loss, is not a defense to an action on the bond unless the negligence was such as to amount to fraud or bad faith.

6. A finding of fact by the trial court, to the effect that transactions prior to the issuance of the bond, in which a "kiting" of checks had been permitted by an employee of the bank, were the result of ignorance and an error in judgment and not of any bad faith on the part of such employee, is *held* to be sustained by the evidence.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Affirmed.*

On September 28, 1909, the defendant for a valuable consideration executed and delivered to the plaintiff its contract of indemnity whereby it agreed as follows:

"That it will, at the expiration of three months after proofs of loss shall have been furnished to the company, pay to the employer the amount of any loss or damage that shall happen to the employer in respect to any funds, property, or estate belonging to or in the custody of the employer, through the dishonesty of any of the employees, or through any act of omission or commission of any of the employees, done or omitted in bad faith and not through mere negligence, incompetency, or any error of judgment, and whether such dishonesty or such act of omission or commission occurs in the performance of any duty or trust specially assigned to such employee or occurs otherwise," not exceeding $10,000.

The contract provided that it should cover acts occurring from April 15, 1909, to April 15, 1910, and that by agreement it might be continued in force from year to year. It was so continued for one year from April 15, 1910. One Eidsmoe was employed as assistant cashier by the plaintiff at the time the contract became effective, and held that position until January, 1910, when he was elected cashier. While acting as assistant cashier and cashier, Eidsmoe permitted one Price to obtain fictitious credit at the bank by the process of "kiting checks;" that is to say, by allowing Price to receive credit for checks drawn on other banks in which he had no funds to meet them, and by permitting him to withdraw from the plaintiff bank moneys to the amount of the fictitious checks so deposited. This practice covered a considerable period of time, and on July 26, 1910, Price had secured $26,220 of the funds of the bank by reason of the deposit of such fictitious checks. Plaintiff brought this action to recover $10,000, being the full amount of the bond.

The defendant set up four defenses in its answer. As its first defense it pleaded the following clause in the contract:

"The employer further covenants and agrees that if at any time during the term for which this bond is written, or during any continuance hereof, there shall come to the knowledge of the employer the fact that any employee for whom the company may be bound under this bond is dishonest or has in bad faith and not through mere negligence or error of judgment done or neglected to do any matter or thing, or that any such employee habitually gambles, uses intoxicating liquors to excess, frequents houses of illfame, or is a spendthrift living beyond his or her means, the employer shall promptly notify the company of such fact, and the failure so to do shall relieve the company from all liability on account of such employee, in respect of loss or damage thereafter arising."

The answer then alleged that the defendant's officers and directors had knowledge of the practice pursued by Eidsmoe before Price had withdrawn any considerable sum from the

bank; that the acts of Eidsmoe were authorized by the officers of the bank and therefore there was no wrongdoing on his part, but that if they were not authorized the defendant was discharged from liability because of plaintiff's failure to promptly notify defendant of Eidsmoe's wrongful acts after it had knowledge thereof.

For a second defense it was urged that Eidsmoe was assistant cashier when the contract was made and that he was thereafter made cashier without notice to the defendant; that the losses sued for were sustained while he occupied the latter position; and that such change without notice was contrary to the representations made by the plaintiff in its application for a bond and operated to discharge the defendant from liability.

For a third defense it was alleged that the plaintiff had not suffered any loss through Eidsmoe's acts; that Price was solvent and had either paid or secured his indebtedness to the bank.

For a fourth defense the defendant set forth that the acts of Eidsmoe were the result of incompetency and error in judgment and not of bad faith, and that the bond did not indemnify the plaintiff against the mistakes or errors in judgment of its employees. By the terms of the contract the defendant obligated itself to make good only such losses as occurred through the dishonesty or bad faith of the employee.

Among other things the court found that between the 5th of January, 1910, and the 25th day of July, 1910, Eidsmoe knowingly and intentionally permitted, allowed, and assisted Price to withdraw from the funds of the bank money which he was not entitled to withdraw, to the amount of $26,220; that such withdrawal was accomplished by means of kiting checks, so that the amount so procured did not appear as an overdraft in the account of said Price on the books of the bank; that plaintiff collected of said Price $7,000 and no more, and that by the acts of Eidsmoe it suffered loss and damage amounting to over $19,000; that Eidsmoe allowed

said Price to withdraw said sums of money and acted in collusion with him, knowing that it was a breach of his duty as an employee of said bank so to do, and with knowledge that the funds of the bank were being thereby illegally transferred to said Price; that Price had engaged in the process of kiting checks as early as October, 1908, and the fact that he was doing or had done so came to the knowledge of W. B. McArthur, president of the plaintiff bank, as early as the month of May, 1909, at which time and from that time forward the said McArthur instructed said Eidsmoe to accept no checks of said Price without satisfactory assurance, either by advice from the bank, indorsements secured, or a similar method, that the same would be paid on presentation; that then for the first time Eidsmoe understood the process and effect of kiting checks, and he then observed McArthur's instructions and the practice of accepting Price's checks on outside banks, whether secured or not, practically ceased in June, 1909, and that up to this time Eidsmoe acted wholly in good faith; that McArthur had no notice or knowledge that said instructions were not being followed or that said Price was thereafter carrying on the process of kiting checks, until the month of August, 1910, when said loss was discovered by the bank examiner and was reported to the officers and directors of the bank; that except as above found neither the plaintiff nor any of its officers or directors had any knowledge of the said process of kiting checks or of the said withdrawal of the funds of the bank or any wrongful or unlawful acts of said Eidsmoe until after the said discovery of the bank examiner; that the promotion of the said Eidsmoe from the position of assistant cashier to cashier did not substantially change the duties which he performed, was not contrary to any representation or warranty made by plaintiff in its application for the bond or renewal thereof, and was not a material change in the risk and hazard insured against by the policy.

As conclusions of law the court found that the acts of

Eidsmoe constituted dishonesty and acts of omission and commission done and committed in bad faith and not through mere negligence, incompetency, or any error of judgment; that the appointment of Eidsmoe to the position of cashier without the knowledge or consent of the defendant does not constitute any defense to the action; that the plaintiff is entitled to recover of and from the defendant the sum of $10,000 with interest from January 10, 1911, to date of judgment.

The errors assigned are (1) the court erred in holding that plaintiff had no knowledge of the kiting permitted by Eidsmoe on account of which loss was sustained; (2) in not sustaining the demurrer *ore tenus* to the complaint.

For the appellant there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Francis Bloodgood, Jr.,* and *Jackson B. Kemper,* of counsel, and oral argument by *F. S. Bloodgood.*

For the respondent there was a brief by *Kreutzer, Bird, Rosenberry & Okoneski,* and oral argument by *C. B. Bird.*

BARNES, J.    1. It is urged that the bond in this case was forfeited by reason of the fact that the employee Eidsmoe was promoted from the position of assistant cashier to that of cashier during its continuance, without notice to the defendant.    The point is not well taken for two reasons.    First, because the bond provides that "the employer may, at any time, transfer any and every employee for whom the company is . . . bound hereunder, from one position to another, and shift any employee about at pleasure without notice to the company, and the company shall be and remain liable to the employer." Therefore under the terms of the bond itself the plaintiff had a right to make the shift which it did without notice to the defendant.    Second, the proof showed that Eidsmoe performed the same work and was intrusted with the same responsibility while he was assistant cashier that he assumed

while he was cashier, and that the change was one in name only and did not affect the character of the work done. No harm resulted to the defendant from making the change.

2. It is also insisted that the bond is a guaranty of collection and not of payment, and that therefore no recovery could be had thereon until the plaintiff had exhausted its remedies against those primarily liable.

The language of the bond is as follows: "The company covenants and agrees . . . that it will . . . pay to the employer the amount of any loss or damage that shall happen to the employer . . . through the dishonesty . . . or through any act of omission or commission of any of the employees, done or omitted in bad faith." The bond further provided that the employer should promptly give notice in writing to the company after knowledge of any loss in respect to which the liability of the defendant was claimed and should within six months furnish the company proof of such loss, and that in default thereof the liability of the company should terminate. It further provided that no action, suit, or proceeding at law or in equity should be maintained on the bond unless the same was commenced within one year from the time of making claim upon the company for the loss in respect to which such action or proceeding was brought.

The language of the covenant is that the defendant would pay to the employer the amount of any loss or damage that might happen, and not that it would pay the net amount of the loss after plaintiff had exhausted its remedies against those liable for the moneys withdrawn from the bank. This court has held that a bond of the kind involved in this case given for a money consideration has all the essential features of an insurance contract, and that it is not to be construed according to the rules of law applicable to the ordinary accommodation surety. *United Am. F. Ins. Co. v. American B. Co.* 146 Wis. 573, 131 N. W. 994. Other cases so holding are *United States F. & G. Co. v. First Nat. Bank,* 233 Ill.

475, 84 N. E. 670; *Farmers' & M. S. Bank v. United States F. & G. Co.* (S. Dak.) 133 N. W. 247; *American S. Co. v. Pauly,* 170 U. S. 133, 18 Sup. Ct. 552.

If the plaintiff were required to exhaust its remedies against Price and Eidsmoe before it could have recourse against the defendant, it might well be that it could not comply with the conditions of the bond at all, because it might not be able to enforce its remedies against these parties within the time which the bond attempts to limit for the commencement of suit thereon. It appears to be quite clear that the language of the bond gives the plaintiff an absolute right to recover its loss from the surety as soon as it occurs, and not the qualified one to recover only so much of the loss as cannot be recovered from those responsible for it. *Queenan v. Palmer,* 117 Ill. 619, 7 N. E. 470. We do not find anything in the cases of *LaRose v. Logansport Nat. Bank,* 102 Ind. 332, 1 N. E. 805; *Closson v. Billman,* 161 Ind. 610, 69 N. E. 449; or *Singer Mfg. Co. v. Littler,* 56 Iowa, 601, 9 N. W. 905, relied on by appellant, which supports its contention.

3. It is argued that the officers of the plaintiff bank had knowledge of the practice of kiting checks which was being carried on after the month of June, 1909, and might have informed the surety of such fact or might have discharged the employee in time to have prevented all loss under the bond, and that because of its failure to do either, the surety is discharged under the clause in the bond set forth in the statement of facts and defining the matters and things which it was the duty of the bank to disclose to the defendant.

The finding of the circuit court negatives actual knowledge of the practice of kiting checks after the time stated. It is true there is evidence in the case from which the court might have found that such knowledge existed, but the officers of the bank denied having such knowledge, and a finding in accordance with their testimony is fairly supported by the evidence.

4. It is further urged that an examination of the books of the plaintiff bank would disclose the practice that was being pursued, and that the officers of the bank were chargeable with knowledge of what was contained in their books, particularly inasmuch as they represented, when the application for the bond was made, that periodical examinations of the bank would be made by its officers.

The language of the bond is that the employer would notify the defendant of certain facts if the same should "come to the knowledge of the employer." We interpret this provision of the bond to mean actual knowledge and not mere constructive notice, which is a very different thing from knowledge, although in some cases its legal effect may be the same. The bond did not require the plaintiff to notify the defendant of matters of which it had knowledge and also of matters of which it might have had knowledge had its officers made a critical examination of its books from time to time.

5. It is urged that in its application for the bond the plaintiff represented that the bank would be examined about once a month by its officers and directors; that monthly meetings were had and cursory examinations were made; that plaintiff was bound to make efficient examinations from time to time, and that if such examinations had been made the cashier's default would have been discovered, and that plaintiff is precluded from recovery by reason of the negligence and carelessness of its officers in conducting their examinations.

This issue is not raised by the pleadings. Negligence is not set up as a defense in the answer, it is not made the subject of any finding by the court, and was not discussed by the court in the exhaustive opinion which it rendered in the case. The bond itself does not require any examinations to be made. If defendant wished to rely on representations made in the application for the bond, it should have so advised the other party by its pleading.

Treating the question as being properly before the court

does not affect the ultimate conclusion to be reached in the case. There was evidence strongly tending to show that the default in question could not have been discovered except by an examination of the draft register, and that while a thorough and critical examination would uncover the wrongdoing, an ordinarily careful one might not.

Mere negligence on the part of the insured which results in loss is not a defense against a fire insurance policy, but is one of the risks covered by the insurance. *Pool v. Milwaukee M. Ins. Co.* 91 Wis. 530, 540, 65 N. W. 54; *Karow v. Continental Ins. Co.* 57 Wis. 56, 62, 64, 15 N. W. 27. Neither is it a defense in an action on the bond of a surety corporation unless it is such that it amounts to fraud or bad faith. *Fidelity & D. Co. v. Courtney,* 186 U. S. 342 (22 Sup. Ct. 833) and cases cited at page 361. The case of *United States F. & G. Co. v. First Nat. Bank, supra,* is to the same effect. We think the doctrine of these cases is sound and should be followed.

6. It is next insisted that at the time the bond was applied for the officers of the plaintiff knew that the practice of kiting checks had been carried on, and that it was its duty to disclose that information in its application for the bond, and furthermore that it was its duty to inform the defendant of that fact under the clause which obligated the plaintiff to inform the defendant of any dishonest transaction in which Eidsmoe participated or of any transactions carried on by him in bad faith and not through mere negligence or error in judgment.

The court found in substance that the original transactions of Price with the bank were permitted through ignorance on Eidsmoe's part of the banking business, and were the result of an error in judgment and not of any bad faith. Eidsmoe was notified on June 12, 1909, to stop the practice which had been pursued, and he did practically stop it for a period of three months. If the acts complained of were not done in bad faith or with a dishonest purpose, no notice was required.

We are unable to say that the inference which the trial court drew from the testimony and from all of the facts and circumstances disclosed by the case is not fairly supported by the evidence, and we do not think the finding on this question of fact should be disturbed by this court.

7. It is also urged, but not very strenuously, that the last acts complained of were the result of errors and not of dishonesty or bad faith on Eidsmoe's part. The circuit court found the contrary, and this finding is clearly supported by the testimony. These transactions occurred after Eidsmoe had received direct and explicit instructions not to cash any checks given by Price on outside banks, unless he had advice from the banks on which the checks were drawn that they would be paid on presentation. There was also some testimony tending at least to show that Eidsmoe profited to some extent by permitting Price to withdraw moneys from the bank in the manner in which he did.

*By the Court.*—Judgment affirmed.