ROCKLAND-ATLAS NATIONAL BANK OF BOSTON *vs.* MASSACHUSETTS BONDING AND INSURANCE COMPANY.

Suffolk.   November 6, 1958. — March 23, 1959.

Present: SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Insurance,* Banker's loss insurance.   *Words,* "Forgery," "Documents," "Instruments."

The word "forgery" as used in a "bankers blanket bond" issued by an insurance company meant the common law crime of forgery as well as acts within statutory definitions of forgery. [734]

A provision in a "bankers blanket bond" issued to a bank by an insurance company excluding "any loss effected directly or indirectly by means of forgery" from the coverage of the insurer's agreement to indemnify the bank against loss of "property" applied to a loss sustained by the bank as a result of participating in making a loan in reliance on a false letter, on which the signature of a certified public accountant had been forged, stating that he had made an examination and that in his opinion a certain financial statement respecting the borrower, also false, presented fairly the borrower's position, even though the bank also relied on oral misrepresentations as to the borrower's financial condition and on the false financial statement. [734]

A clause entitled "Securities" in a "bankers blanket bond" issued to a bank by an insurance company whereby the insurer agreed to indemnify the bank against "any loss through . . . [its] having, in good faith . . . given any value . . . on the faith of . . . any se-

curities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any . . . person signing in any . . . capacity," construed in its context and with the other provisions of the "bond," did not apply to a false financial statement concerning a prospective borrower purporting to be certified by a letter, also false, on which the signature of a certified public accountant had been forged, nor cover a loss sustained by the bank as a result of participating in making a loan to that borrower in reliance on the purported certified statement. [738]

CONTRACT. Writ in the Superior Court dated July 27, 1957.

The action was reserved and reported by *Pecce*, J., without decision.

*Theodore Chase*, (*Virginia Aldrich* with him,) for the plaintiff.

*Joseph P. Rooney*, (*John M. Reed* with him,) for the defendant.

WHITTEMORE, J. This action on a "Bankers Blanket Bond Standard Form No. 24" was reserved and reported by the judge in the Superior Court on the pleadings and a case stated.

On May 10, 1954, one Morrison, an officer of Guaranty Trust Company of Waltham (Guaranty), by telephone to an officer of the plaintiff asked it "to participate to the extent of one hundred per cent in a loan of $25,000 to be made by Guaranty to Nashua Sales Co., Inc." (Nashua). Morrison said that Nashua's financial condition warranted the making of the loan and that he had a financial statement on Nashua certified to by a certified public accountant. He read the figures which he said were contained in the balance sheet. The plaintiff's officer, relying upon the representations, said that it would participate in the loan to the extent of one hundred per cent, it being understood by the parties from the prior course of dealings between them that the plaintiff would so participate only upon receipt of, and an opportunity to examine, the papers referred to or copies thereof.

On the same day, May 10, 1954, Guaranty made a loan of $25,000 to Nashua evidenced by a demand note and

completed the loan by crediting $25,000 to Nashua's account. Morrison then mailed to the plaintiff a participation certificate and accurate typewritten copies of the writings which he had referred to, that is, a purported balance sheet and profit and loss statement of Nashua, and a purported letter from a certified public accountant stating that he had made an examination and that the statement of assets and liabilities in his opinion presented fairly Nashua's position. The plaintiff, by its officer, on May 13, 1954, received and examined the copies and, finding them to accord with the representations, and relying upon the information in them and believing that the copies were of an existing authentic financial statement and an accountant's letter, credited Guaranty's account with $25,000. The statement and the letter were false, and the purported signature of the accountant was not made by him or with his authority. The officer who acted for the plaintiff was not familiar with the accountant's signature. Morrison and an officer of Nashua were indicted and convicted "in connection with this transaction for stealing the property of Guaranty" and for other unrelated offences.

The loan participation certificate was non-negotiable and provided that Guaranty, except for its obligation to make distribution thereunder, should be free from liability on account of the participation.

The plaintiff makes an argument for loss of "Property" under clause (B) of the bond, but its chief reliance is on clause (E) [1] and, specifically, on the words italicized in the marginal quotation.

---

[1]                              "SECURITIES

"(E) *Any loss through the Insured's having, in good faith and in the course of business,* whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or *given any value,* extended any credit or assumed any liability, *on the faith of,* or otherwise acted upon *any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any* maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any *person signing in any* other *capacity,* or raised or otherwise altered or lost or stolen, or through the Insured's having, in good faith and in the course of business,

Clause (E) is one of seven clauses stating losses covered. The other clauses provide coverage (in rough summary except as to clause (A)) as follows: Clause (A) (entitled "Fidelity"), "Any loss through any dishonest, fraudulent or criminal act of any of the Employees, committed anywhere and whether committed alone or in collusion with others, including loss of Property through any such act of any of the Employees"; clause (B) ("On Premises"), loss of "Property" as defined, through broadly stated causes, "while . . . lodged or deposited within any offices or premises," with certain premises excluded, and loss of or damage to offices, equipment and supplies from stated causes; clause (C) ("In Transit"), loss of "Property" in transit through causes, broadly stated, and with certain exceptions; clause (D) ("Forgery or Alteration"), forgery or alteration of, checks and other specified writings of kinds used for or to represent or to obtain delivery of or to receipt for money or property, and of promissory notes; clause (F) ("Redemption of United States Savings Bonds") and clause (G) ("Counterfeit Currency"), losses of kinds somewhat suggested by the titles.

There are a number of express exclusions including (1 (a)) "Any loss effected directly or indirectly by means of forgery, except when covered by Insuring Clause (A), (D), (E), (F) or (G)," and (1 (d)) "Any loss the result of the complete or partial non-payment of or default upon any loan made by or obtained from the Insured, whether procured in good

---

guaranteed in writing or witnessed any signatures, whether for valuable consideration or not and whether or not such guaranteeing or witnessing is ultra vires the Insured, upon any transfers, assignments, bills of sale, powers of attorney, guarantees, endorsements or other documents upon or in connection with any securities, obligations or other written instruments and which pass or purport to pass title to such securities, obligations or other written instruments; EXCLUDING, HOWEVER, any loss through FORGERY OR ALTERATION of, or in any checks, drafts, acceptances, withdrawal orders or receipts for the withdrawal of funds or Property, certificates of deposit, letters of credit, warrants, money orders or orders upon public treasuries; and excluding, further, any loss specified in subdivisions (1) and (2) of Insuring Clause (D) as printed in this bond, whether or not any amount of insurance is applicable under this bond to Insuring Clause (D) [emphasis supplied].

"Mechanically reproduced facsimile signatures are treated the same as handwritten signatures."

faith or through trick, artifice, fraud or false pretenses, except when covered by Insuring Clause (A), (D) or (E)."

We rule that exclusion 1 (a) disposes of the possible claim for loss of "Property" under clause (B). Forgery is a common law crime. See *Commonwealth* v. *Ayer*, 3 Cush. 150; *Commonwealth* v. *Hinds*, 101 Mass. 209; *Commonwealth* v. *Dallinger*, 118 Mass. 439, 441; *Commonwealth* v. *Dunleay*. 157 Mass. 386, 387; *Quick Serv. Box Co. Inc.* v. *St. Paul Mercury Indem. Co.* 95 F. 2d 15, 16–17 (7th Cir.); *Security Natl. Bank* v. *Fidelity & Cas. Co.* 246 F. 2d 582, 586 (7th Cir.). There is no suggestion that the word is here used only to refer to those acts which may come within a statutory definition of forgery in the particular jurisdiction where the act occurs. See G. L. c. 267, § 1. Granting that the plaintiff acted in part because of Morrison's oral misrepresentation, and assuming that the false financial statement had some inducing effect apart from the forged letter, it remains the fact that the loss was "effected directly or indirectly by means of" that forged letter. The requirement is not that the loss be effected exclusively by forgery. It follows that recovery can be had, if at all, only under clause (E), for clauses (A), (D), (F) and (G) are plainly inapplicable.[1]

We turn to the construction of the critical words in clause (E): "Any loss through the Insured's having, in good faith and in the course of business . . . given any value . . . on the faith of . . . any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any . . . person signing in any . . . capacity."

We rule that forgery for purposes of clause (E) has the same broad meaning that it has in exclusion 1 (a). We assume that the plaintiff acted on the faith of the purported originals even though no officer or agent examined them.

---

[1] See for cases broadly construing clause (B), notwithstanding the suggestions in the bond that losses there referred to are of tangible property lost "On Premises," *Hartford Acc. & Indem. Co.* v. *Federal Deposit Ins. Corp.* 204 F. 2d 933 (8th Cir.); *Fidelity & Cas. Co.* v. *Bank of Altenburg*, 216 F. 2d 294 (8th Cir.), cert. den. 348 U. S. 952; *National Bank* v. *Fidelity & Cas. Co.* 131 F. Supp. 121; *Johnstown Bank* v. *American Sur. Co.* 6 App. Div. (N. Y.) 2d 4.

The case then turns on the construction of the words "documents or other written instruments."

While "documents" and, in imprecise usage, "instruments" may in appropriate context mean almost any "writing," [1] none of the signs within clause (E) which appears either on a first or on a more careful reading of the clause shows that this is such a context. The title "Securities," although not controlling against a plain textual showing to the contrary, suggests that clause (E) is dealing with "securities and writings something like securities" and it speaks against an intention to encompass all writings or all formal writings. See *Charles I. Hosmer, Inc.* v. *Commonwealth,* 302 Mass. 495, 501; *Baruffaldi* v. *Contributory Retirement Appeal Bd.* 337 Mass. 495, 501; *Commissioner of Corps. & Taxn.* v. *Chilton Club,* 318 Mass. 285, 292. It is of some significance also that it would have been a simple matter to have added the words "or acted upon any formal or official written assurance" or "upon a certified financial statement" if such coverage was intended.

Reading more closely, we find an indication of the kind of writings intended to be dealt with in the enumeration of the category of signers whose signatures may be forged. The language is: "forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity . . . ." Under a familiar canon of construction the closing catchall phrase means: "in any other [similar] capacity." *Marrs* v. *Barbeau,* 336 Mass. 416, 420. This enumeration and the other signs just noticed speak, we think, of the kind of writings described in the dictionary definition of "instruments" which both parties cite in their briefs: "A writing, made and executed as the expression of some act, contract, or proceeding, as a deed, writ, etc." This tends to confirm the implication of the order in which the words appear that the

---

[1] A dictionary definition of "document" cited by the plaintiff is: "An original or official paper relied upon as the basis, proof, or support of anything else; — in its most extended sense, including any writing, book, or other *instrument* conveying information" (emphasis supplied).

concluding word "instruments" is the key word for the construction of the phrase.

"Instruments" is used again in clause (E) in the statement of further coverage, but in an even more restricted sense. "Documents" is also again used but in a way that shows that it takes its meaning from the words with which it is used. This further purpose of clause (E) (see marginal quotation of the clause (*supra*) ) is to cover losses through having "guaranteed in writing or witnessed any signatures . . . upon . . . *documents* . . . which pass or purport to pass title to . . . securities, obligations or other written *instruments*" (emphasis supplied). "Instruments" appears at this point to be used with the restricted meaning of a chose in action of the kind of which title is usually transferred by a writing, while "documents" designates a writing operative to pass title to "instruments." There is nothing in this further use of the words in clause (E) to broaden their meaning in the phrase we are construing.

We conclude therefore that the meaning of the phrase "securities, documents or other written instruments," at least so far as clause (E) shows, is not broader in meaning than the dictionary definition of "instruments" above set out.

In this construction the progression of meaning in the phrase is a natural one, whereas if "documents" had a meaning as broad as "any formal writing" (as the plaintiff contends) there would be no occasion to specify "instruments." The use of the word "other" shows that, whatever "documents" are, they are included within the meaning of "instruments." Giving "documents" a limited meaning gives sense to the closing catch-all, "other written instruments," which, presumably, states the extent of the coverage. The defendant points to the commercial meaning of "documents" (see the dictionary definition of the word in commercial usage, and see G. L. c. 255A, § 1, repealed by St. 1957, c. 765, § 2; and c. 106, § 9–105 (1) (e), added by St. 1957, c. 765, § 1) as a meaning encompassed within that of "instruments" in the sense we think is shown in

the phrase. We need not pause to determine what other such meanings there may be or the precise scope of either word. It is enough that nothing within clause (E) shows a meaning broader than "securities, documents or other written instruments [that is, writings executed as the expression of some act, contract or proceeding]."

The plaintiff urges, however, that the general purpose of the bond shows that a wider meaning is intended and that we may recognize this by giving "documents" its "natural" meaning indicated in the dictionary definition quoted marginally, *supra,* and by construing the phrase as broad enough to include the certified balance sheet as a writing of formal or official character such as is commonly intended to be relied on in commercial transactions. The plaintiff asks why the forgery of a few types of writings among those often relied on by bankers in the course of their business should be excluded particularly from a blanket bond. The bond, however, does not purport to cover all losses (see *National Bank* v. *Fidelity & Cas. Co.* 125 F. 2d 920, 924); if it did, the entire coverage could have been written in the short and exclusive terms in which the fidelity of employees is covered in clause (A). That there is a large exclusion from general coverage is shown by exclusion 1 (d). We assume that the transaction was a purchase and not a loan so that the exclusion of losses on loans, even if procured by fraud, is not in terms applicable. But lending is a large part of a bank's business, and losses due to fraud are plainly not blanketed by this bond. Only those losses from fraud are covered which are within the broadly specified terms of clause (A) (fidelity of employees) or the more precisely specified terms of other clauses.

The plaintiff points also to the definition of "Property" elsewhere in the bond where these words occur: "and assignments of such policies, mortgages and *instruments,* and other valuable papers and *documents,* and all other *instruments* similar to or in the nature of the foregoing . . ." (emphasis supplied). We assume that the bond here uses

"documents" in a meaning at least as broad as "other valuable papers." In its first use, "instruments" here appears to speak of a limited category of writings. In its second position, it may be only a reference back to the meaning of the word as first used, but we assume that it may be used in a sense at least as broad as "documents." This showing that the word "documents," and perhaps the word "instruments," has been used elsewhere in the bond to designate any valuable writing would be significant in clause (E) only if there was an indication that the words are used in the same meaning throughout the bond (see *Clark* v. *State St. Trust Co.* 270 Mass. 140, 151) or that a broad meaning is intended in clause (E). Neither requirement is met. Neither word is used throughout the bond with the same meaning. The point is emphasized that the meaning of these often chameleon like words must come from the immediate context. The structure and purpose of the bond confirm that it is within clause (E) that we must find what the words "securities, documents or other written instruments" mean. There is no basis for straining the construction of the phrase beyond the contextual showing of clause (E) and we rule therefore that the meaning does not include the certified balance sheet on which the plaintiff relied.

*Judgment for the defendant.*