**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

**v.**

**Louie M. PEEL, Defendant.**

**Civ. A. No. 4251.**

United States District Court
E. D. Texas,
Tyler Division.

Oct. 7, 1964.

Charles Donahue, Solicitor, U.S. Dept. of Labor, Washington, D.C., Earl Street, Regional Atty., T. Hagan Allin, Trial Atty., U.S. Dept. of Labor, Dallas, Tex., for plaintiff.

Louis M. Peel, pro se.

SHEEHY, Judge, deceased.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came on for hearing pursuant to assignment on the 28th day of September 1964, and after hearing and considering the evidence introduced by the respective parties, and being fully advised in the premises, the Court now makes and files herein the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

#### I.

Jurisdiction of this action is conferred upon the Court by Section 17 of the Fair Labor Standards Act of 1938, as amended (52 Stat. 1060, as amended; 29 U.S.C. § 201 et seq.), hereinafter called the Act.

#### II.

Plaintiff, Secretary of Labor, United States Department of Labor, brought this suit in his official capacity seeking a judgment permanently enjoining and restraining the defendant, his agents, servants, and employees from violating the provisions of Sections 6, 7, 11(c), 15 (a) (2), and 15(a) (5) of the Act.

#### III.

Defendant, Louie M. Peel, is a resident of Van Zandt County, Texas, within the jurisdiction of this Court, and at all times pertinent to this cause of action was the owner of three tractors and mowers. During all time material hereto, and particularly during the 1963 and 1964 mowing seasons, generally starting in May and ending in September of each year, the defendant has been engaged under contract with the Texas Highway Department in the business of mowing and cutting grass along state, county, and U. S. roads and highways in the vicinity of Canton, Van Zandt County, Texas.

Under the terms of defendant's contract and agreement with the Tyler District Office of the Texas Highway Department, defendant undertakes to furnish three tractors and mowers with drivers, for which he is compensated at the rate of $3.00 per hour, and he undertakes to cut and mow grass along such roads and highways as the Texas Highway Department might designate. During the period material hereto, the defendant has engaged both himself and his equipment in cutting and mowing grass principally along State Highways 19 and 64, U. S. Highway 80, and Interstate Highway 20.

U. S. Highway 80 originates at the Texas-Mexico border in El Paso, Texas, and proceeds eastward through the State of Texas into Louisiana, Mississippi, Alabama, and terminates on the eastern shores of the Atlantic at Savannah, Georgia. Interstate Highway 20 constitutes a part of a national system of interstate and defense highways, and has been planned and routed and is designed to utilize to the extent feasible the existing roadbed of presently existing U. S. Highway 80.

Texas Highway 19 originates at Huntsville, Texas, at an intersection with U. S. Highway 75, and proceeds northerly through east Texas into Paris, Texas, in north Texas. U. S. Highway 271

leaves Paris, Texas, running north for a distance of twenty-five miles to the Texas-Oklahoma state border, and for planning and improvement purposes, it is considered by the State Highway Department as a continuation of State Highway 19.

Texas State Highway 64 has its beginning at an intersection of U. S. Highway 80 at Wills Point, Texas, and proceeds eastward through Canton, Tyler, and terminated at Henderson, Texas.

The testimony in this case reflects that both Texas State Highways 19 and 64 are and have been during all time material hereto regularly utilized by trucks, trailer-trucks, and U. S. Mail trucks. U. S. Mail trucks and U. S. Mail rural delivery regularly utilize such highways in the transportation of mail and parcel post, which both originate from outside the State of Texas, and for delivery to addressees within the State of Texas, and particularly in the Canton, Texas, area, as well as mail and parcel post to be delivered to addressees outside the State of Texas. The interstate use of Texas Highways 19 and 64 and of U. S. Highway 80 and the contemplated use therefor of Interstate Highway 20 establishes these roads and highways instrumentalities of interstate commerce.

It was plaintiff's witness, Mr. Thompson, who has served as traffic and maintenance engineer in the Tyler District Office of the Texas Highway Department which includes the Canton, Texas, area, who testified that the mowing of grass and weeds along the rights of way and sides of state, county, and federal highways and roads serves a four-fold purpose, namely, (1) It eliminates a fire hazard which results during dry periods unless the weeds and grass are cut down; (2) It facilitates drainage, since extensive undergrowth in wet weather slows the water runoff, which would in turn weaken the roadbed; (3) Tall weeds would affect the safety of vehicles utilizing highways and roads by making it difficult to see warning signs, interfere with vision at intersections, and

the like; (4) It improves the appearance of the roads and highways.

### IV.

The testimony and evidence adduced at the trial of this case clearly establishes that defendant generally operated one of the tractors and mowers himself and obtained the services of at least two other individuals to operate the other two tractors and mowers. During the 1964 mowing season, defendant had entered into written contracts and agreements with a Mr. B. B. Boatwright and a Mr. Woodrow Cole, which purported to designate each of such individuals subcontractors and Mr. Peel the contractor, and under the terms of such contracts such individuals were to mow along the rights of way of highways and roads as the contractor (defendant) might designate and that the subcontractors would be compensated for their services on the basis of $9.00 per mile mowed. The contract further provided that the contractor would furnish the subcontractors with all necessary machines, tools, and equipment to enable the subcontractors to perform.

The testimony of Mr. Boatwright established that on some days he might mow more and on other days less than one mile, and that during a five-day workweek he might mow more or less than five miles and that insofar as he was aware no one made any measurements of the distances mowed, and that during his employment by the defendant, he was paid on the basis of $9.00 a day for a nine-hour day, and when he worked five days, he was paid $45.00 irrespective of the distance in terms of mileage that may have been mowed. Mr. Boatwright testified further that he was not paid any additional compensation as overtime for hours worked in excess of forty during the workweek. It was not disputed but what the defendant under the terms of his contract with the Texas Highway Department was restricted to operating his mowers nine hours a day and five days a week, and that during the 1964 mowing season in the majority of workweeks, the defendant was compensated

for forty-five hours for each mower at $3.00 an hour.

On the basis of uncontradicted testimony, it is clear that when defendant compensated Mr. Boatwright and Mr. Cole on the basis of $9.00 for a nine-hour day that such employees were being compensated at an hourly rate of not more than $1.00 per hour, which hourly rate is less than the applicable hourly $1.15 rate effective under the Act since September 3, 1961, and of the $1.25 hourly rate effective under the Act since September 3, 1963.

Also and as a result of defendant's compensation practices as referred to above, in those workweeks when Mr. Boatwright and Mr. Cole worked more than forty hours, such employees received no additional compensation at not less than one and one-half times their regular hourly rates of pay for hours worked in excess of forty during such workweeks.

■ The testimony and evidence established that defendant failed to make, keep, and preserve an accurate record of the daily and weekly hours worked by Mr. Boatwright and Mr. Cole as required by regulations duly promulgated pursuant to authority conferred upon the Administrator of the Wage and Hour Division, United States Department of Labor, by Section 11(c) of the Act. The said regulations, and the amendments thereto, are published in the Federal Register, and are known as Title 29, Chapter V, Code of Federal Regulations, Part 516.

## V.

The defendant herein as a defense to any failure on his part to comply with the monetary and record keeping provisions of the Act relies solely upon his written contract with the two employees referred to in the first paragraph under Findings No. IV, above, claiming that these individuals were not his employees, but rather were either sub or independent contractors.

The Fair Labor Standards Act contains its own definitions relating to the employment relationship under this Act, as follows:

Section 3. As used in this Act * * *

(g) "Employ" includes to suffer or permit to work.

\* \* \* \* \* \*

(e) "Employee" includes any individual employed by an employer.

\* \* \* \* \* \*

(d) "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee.

■ On the basis of the testimony and contractual exhibits, it is clear that the defendant has attempted by means of a contractual label to relieve himself of his statutory responsibilities as an employer in dealing with the individuals hired by him to operate his tractors and mowers. The defendant exercised complete control over these individuals, determining when, where, and how they should perform their mowing activities, and furnishing them with all of the required machines, tools, and equipment. The individuals with whom defendant has contracted had no investment in tools or equipment and no opportunity for profit or loss by utilization of independent judgment and business acumen. Defendant was an employer within the meaning of the Act, and individuals such such as Boatwright and Cole were employees of defendant.

## VI.

Plaintiff's representative, Mr. D. S. Taylor, investigator, Wage and Hour and Public Contracts Divisions, United States Department of Labor, testified that he conducted an investigation of defendant's operations under the Act in September 1963 and that at such time defendant was then relying upon a written contract with the individuals operating his tractors and mowers under the terms of which they were being compensated on the basis of $8.00 per day. Mr. Taylor testified that the only change instituted by defendant following the September 1963 investigation was to change the

method of compensation from $8.00 per day to a purported $9.00 per mile.

## CONCLUSIONS OF LAW

### I.

The Court has jurisdiction under authority of Section 17 of the Fair Labor Standards Act, as amended.

### II.

Individuals obtained by defendant to operate his tractors and mowers such as Mr. Boatwright and Mr. Cole, referred to in Findings of Fact IV above, followed the usual course of an employee within the meaning of the Act.

### III.

In performing mowing and cutting of grass along such roads and highways as referred to in Findings of Fact III above, defendant and his employees were engaged in interstate commerce, as that term is defined by Section 3(b) of the Act, and are entitled to the monetary benefits of the provisions of Sections 6, and 7 thereof.

### IV.

In failing to compensate his employees subject to the Act, as aforesaid, wages at rates not less than $1.25 per hour since September 3, 1963, defendant has violated the provisions of Sections 6 and 15(a) (2) of the Act.

### V.

In failing to compensate his employees subject to the Act, as aforesaid, at rates not less than one and one half times their regular rates of pay for all hours worked in excess of forty during many workweeks, defendant has violated the provisions of Sections 7 and 15(a) (2) of the Act.

### VI.

In failing to make, keep, and preserve adequate and accurate records of the hours worked by his employees each workday and each workweek, defendant has violated the provisions of Sections 11(c) and 15(a) (5) of the Act.

### VII.

Plaintiff is entitled to an injunction permanently restraining defendant from violating provisions of Sections 6, 7, and 15(a) (2) and Sections 11(c) and 15(a) (5) of the Act as prayed for.