## FIRST NATIONAL BANK OF FORT WALTON BEACH, Plaintiff,

v.

## UNITED STATES FIDELITY AND GUARANTY COMPANY, an insurance corporation, Defendant.

### Civ. A. No. 1747.

United States District Court
N. D. Florida,
Pensacola Division.

Oct. 16, 1967.

Bert Lane and Roderic G. Magie, of Beggs, Lane, Daniel, Gaines & Davis, Pensacola, Fla., for plaintiff.

D. L. Middlebrooks, of Harrell, Caro, Middlebrooks & Wiltshire, Pensacola, Fla., for defendant.

## MEMORANDUM DECISION

CARSWELL, Chief Judge.

This case is before the Court on defendant's motion to dismiss. It is basic that in consideration of a motion to dismiss, the Court must accept as true the facts as alleged in the complaint. Without determining the ultimate adequacy of plaintiff's proofs, the Court looks to the face of the complaint and the terms of the attached insurance policy in determining whether a cause of action exists.[1]

The Court concludes that a cause of action does exist and that defendant's motion to dismiss the complaint should be denied.

This case involves an alleged loss of the plaintiff bank ("the bank") allegedly covered by the indemnification provisions of a banker's blanket bond ("the policy") issued by the defendant insurance company ("the insurance company") to the bank.

The loss allegedly resulted from the default of a loan extended on the

---

1. Washington v. Official Court Stenographer, 251 F.Supp. 945 (D.C.Pa.1966); Blau v. Oppenheim, 250 F.Supp. 881 (D. C.N.Y.1966). See also Tranowski v. Chicago Bar Ass'n, 309 F.2d 421 (7th Cir. 1962) to the same effect regarding an appeal from the dismissal of a complaint and Cf. Fuhrer v. Fuhrer, 292 F.2d 140 (7th Cir. 1961) to the effect that on defendant's motion to dismiss, the facts as alleged must be viewed in the light most favorable to plaintiff.

strength of Program Certificate and Advices of the Dreyfus Investment Program of the Bank of New York allegedly altered by Jo Vonne M. Barnes.

As shown by the exclusions, the policy does not insure the bank generally against forgery or default but only to the extent as specifically set forth in other clauses of the policy.

The specific clauses which control here are clauses (D) and (E), which by their alternative language are broad enough as a matter of law to cover the type of loss allegedly sustained by the bank. The meaning of the terms of clauses (D) and (E), both commercially and as construed by this Court, are held to include the alleged loss, and apparent confusion on this point is properly excluded if each and every *or* in both clauses is read according to its function as a disjunctive, alternative word. The comma as used in clauses (D) and (E) also clarifies the scope of the policy.

The pertinent portion of clause (D) is thus properly read to mean "which instructions *or* advices have been altered without the knowledge and consent of such banking institution.[2] " The "banking institution" which had no knowledge nor gave consent is, in this case, the Bank of New York, the custodian for the Dreyfus fund. This Bank's name and status are prominently listed on both the Advices and the Investment Certificate, and it is reliance on these items which allegedly caused the plaintiff bank's loss and which were allegedly altered without the knowledge and consent of the Bank of New York.

The pertinent portion of Clause (E) as well as the exact practical and commercial nature of the Certificate and Advices make it clear to this Court that the Certificate and Advices are the kind of security, documents *or* other written instruments that Clause (E) was intended to encompass, in terms of collateral or security for *extending any credit* (the expressed predicate for the loss under Clause (E)). Under Clause (E) the loss may be due *inter alia* to *alterations of* "securities, documents *or* other written instruments."

The Dividend Reinvestment Advices along with the Program Certificates are evidence of the ownership of fund shares in the Program. In purchasing the investment fund program from the original investor, a buyer has for examination both Program Certificate and Advices to ascertain the present size of that investor's ownership in the fund, then may check the current fund share quotation to determine the value of that investor's accumulations. Both Certificate and Advices are necessary to show this value. There is no apparent reason to doubt the veracity of the Program Certificate or the Advices. But each is such that it can be altered, counterfeited, stolen or misaddressed.

Certain arguments and case authorities advanced by defendant insurance company have been examined by the Court and found to be distinguishable and inapplicable in view of the terms of this policy and the alleged facts. Neither commercial usage nor distinctions made in case law conflict with the relevant language of this policy and its application to the facts alleged in this complaint.

It is, therefore, hereby

Ordered:

Defendant's motion to dismiss be and it is hereby denied.

---

2. This entire portion of clause (D) with emphasis added reads: *"which instructions or advices* purport to have been signed or endorsed by any customer of the insured or by any banking institution but which instructions or advices either bear the forged signature or endorsements or *have been altered without the knowledge and consent of such* customer or *banking institution.* * * * " Note the six disjunctives to which emphasis could have been added as well as the one italicized.

Parker **DUFFY**, Gregory Alkema, and
Robert Cross, Plaintiffs,

v.

**Joseph S. OELE, dba Oele Rental Service,
and Oele Ambulance Service, Inc.,
Defendants.**

Civ. A. No. 5472.

United States District Court
W. D. Michigan, S. D.

Sept. 28, 1967.

Warner, Norcross & Judd, Grand
Rapids, Mich., Thomas J. McNamara,
Grand Rapids, Mich., of counsel, for
plaintiffs.

Varnum, Riddering, Wierengo &
Christenson, Grand Rapids, Mich., Carl
E. VerBeek, Grand Rapids, Mich., of
counsel, for defendants.

## OPINION ON MOTION TO DISMISS

FOX, District Judge.

In an action for unpaid minimum wages, over-time compensation, liquidated damages, and attorney fees under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., defendants have made a motion to dismiss on the ground that they are exempt from the provisions of the Act.

Defendant Joseph Oele was the sole proprietor of Oele Rental Service, which was subsequently succeeded in interest by Oele Ambulance Service, Inc.

Plaintiffs were employed by defendants as ambulance drivers. Their work involved transporting sick and injured persons between their residences and hospitals, and responding to emergency calls to pick up dead and injured victims of automobile accidents on public streets and highways. All of the relevant facts in this case occurred before the 1966 amendment of the Fair Labor Standards Act effective February 1, 1967.

Defendants advance three different theories as reasons for exempting them from the provisions of the Act. First, defendants contend that their business was and is a retail or service business; second, they claim that Section 213(a) (12), exempting "any employee of an employer engaged in the business of operating taxi cabs" is applicable to them; and third; defendants maintain that they are not engaged in commerce or in the production of goods for commerce.

We will discuss the issues raised by the defendants in the order set forth above.

Section 213(a) (2) of 29 U.S.C.A. provides in part:

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to—

\*    \*    \*    \*    \*    \*

(2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, if such establishment—

\*    \*    \*    \*    \*    \*

(iv) is in such an enterprise and has an annual dollar volume of sales (exclusive of excise taxes at the retail level which are separately stated) which is less than $250,000.

A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry;  \*  \*  \*."

In order for a retail or service establishment to qualify under the exemption set forth above, defendants must establish that there is a concept of retail selling or servicing within the ambulance industry.

This was spelled out in 29 C.F.R. Section 779.316 [1] and confirmed by the

---

1. 29 C.F.R. 779.316 provides in part:
   The term 'retail' is alien to some businesses or operations. For example, transactions of an insurance company are not ordinarily thought of as retail transactions. The same is true of an electric power company selling electrical energy to private consumers. As to establishments of such businesses, therefore, a concept of retail selling or servicing does not exist. That it was the intent of Congress to exclude such businesses from the term 'retail or service establishment' is clearly demonstrated by the legislative history of the 1949 amendments and by the judicial construction given said term

   both before and after the 1949 amendments. It also should be noted from the judicial pronouncements that *a 'retail concept' cannot be artificially created in an industry in which there is no traditional concept of retail selling or servicing.* (95 Cong.Rec. pp. 1115, 1116, 12502, 12506, 21510, 14877, and 14889; Mitchell v. Kentucky Finance Co., 359 U.S. 290 [79 S.Ct. 756, 3 L.Ed.2d 815]; Phillips Co. v. Walling, 324 U.S. 490 [65 S.Ct. 807, 89 L.Ed. 1095]; Kirschbaum Co. v. Walling, 316 U.S. 517 [62 S.Ct. 1116, 86 L.Ed. 1638]; Durkin v. Joyce Agency, Inc., 110 F.Supp. 918 (N.D. Ill.) affirmed sub nom. Mitchell v.

United States Supreme Court in Idaho Sheet Metal Works v. Wirtz, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966), where Justice Harlan said at 383 U.S. 202, 203, 86 S.Ct. 745:

"Since we reject the industry's usage as the single touchstone, the question arises what meaning is to be given to the term retail. In approaching this question we agree with the Secretary that *it is generally helpful to ask first whether the sale of a particular type of goods or services can ever qualify as retail whatever the terms of sale; if and only if the answer is affirmative is it then necessary to determine the terms or circumstances that make a sale of those goods or services a retail sale.*" (Emphasis supplied.)

Defendants assert by affidavit that the "ambulance service is considered to be a traditional retail service in its industry, since the general consuming public can call the defendants directly and request and obtain the ambulance service, and there is no middle man between the consuming public and the defendants, nor is there anyone who resells the defendants' service to the consuming public. The defendants' service is similar to the service provided by hospitals and funeral homes, both of which are recognized as retail by the Administrator of the Fair Labor Standards Act." (Affidavit of Melvin Huttenga, an owner of Oele Ambulance Service, Inc.)

In Mitchell v. Kentucky Finance Co., 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959), the Supreme Court held that a small loan company did not qualify as a retail or service establishment, regardless of the class of persons with which it dealt and regardless of whether the financial industry thought a small loan company engaged in retail financing. Justice Harlan observed:

"Any residual doubt on this score is dispelled by the explicit and repeated statements of the sponsors of the amendatory legislation and in the House and Senate Reports to the effect that 'The amendment does not exempt banks, insurance companies, building and loan associations, credit companies, newspapers, telephone companies, gas and electric utility companies, telegraph companies, etc., because there is no concept of retail selling or servicing in these industries. *Where it was intended that such businesses have an exemption one was specifically provided by the law * * *' It is well settled that exemptions from the Fair Labor Standards Act are to be narrowly construed.* A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095; see also Powell v. United States Cartridge Co., 339 U.S. 497, 517, 70 S.Ct. 755, 766, 94 L.Ed. 1017. In the light of the abundant pointed evidence that Congress did not intend that businesses like those of respondents be exempted from the overtime and record-keeping provisions of the statute by § 13(a) (2), *we would not be justified in straining to bring respondents' activities within the literal words of the exemption.*" 359 U.S. at 295, 296, 79 S.Ct. at 759. (Emphasis supplied.)

In Opinion Letter No. 447, March 28, 1966, C.C.H. Labor Law Reporter, Wages-Hours Administrative Rulings, Paragraph 30,996.85, the Wage-Hour Admin-

Joyce Agency, Inc., 348 U.S. 945 [75 S.Ct. 436, 99 L.Ed. 740]; Goldberg v. Roberts d/b/a Typing & Mailing Unlimited, 15 WH Cases 100, 42 LC Par. 31,126 (CA-9); Telephone Answering Service v. Goldberg, 15 WH Cases 67, 42 LC Par. 31,104 (CA-1). It is plain, therefore, that the term 'retail or service establishment' as used in the Act does not encompass establish-

ments in industries lacking a 'retail concept'. Such establishments not having been traditionally regarded as retail or service establishments cannot under any circumstances qualify as a 'retail or service establishment' within the statutory definition of the Act, since they fail to meet the first requirement of the statutory definition." (Emphasis supplied.)

istrator ruled " * * * that the typical ambulance service establishment, engaged exclusively or nearly so in providing a specialized form of transportation for the sick, injured, aged or handicapped, is a part of the branch of the transportation industry closely analogous to the taxi cab or airport limousine service. There is no traditional retail concept in the transportation industry." In reaching this decision, the Administrator noted that Congress also recognized this distinction by including special provisions exempting transportation employees. For example, see Sections 13(a) (9) and 13(b) (7), local transit employees, and Section 13(a) (12).

■ Interpretive bulletins and rulings of the Administrator of the Wage and Hour Division of the Department of Labor are not binding on the courts. They are entitled, however, to careful consideration. In Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), the court said:

"We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, *do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.*" 323 U.S. at 140, 65 S.Ct. at 164. (Emphasis supplied.)

■ The reasoning of the Wage and Hour Administrator in the above opinion

letter is persuasive and, accordingly we hold that ambulance service is not a retail or service establishment.

As a second ground for dismissal, defendants contend that the services performed by ambulances are closely analogous to the services taxi cabs provide, and that therefore, under Section 213(a) (12) defendants are exempt.

In Wirtz v. Cincinnati, Newport & Covington Transp. Co., 375 F.2d 513 (C.A. 6, 1967), the Sixth Circuit Court of Appeals held that four-passenger sedans called "Red Tops," which operate from the Cincinnati airport, were not taxi cabs as defined by Section 213(a) (12). The court in its opinion quoted from the findings of the district court which said: "Exemptions under the Act are to be narrowly construed and defendants have the burden of proving that their employees are exempt from the provisions of Sections 6 and 7 by reason of Section 13(a) (12)." 375 F.2d at 515.

■ Although, as Holmes said, a word is the skin of a thought and may vary in color and text in accordance with the circumstances, when Congress passed Section 213(a) (12), we believe that despite whatever attributes a taxi and an ambulance have in common, it did not intend to exempt employees engaged in operating ambulances.

Finally, as a third basis for dismissal, defendants state they are not engaged in commerce, or in the production of goods for commerce.[2]

2. The interpretative bulletin of the United States Department of Labor with respect to the general coverage of the Wage and Hour Provisions, 29 CFR § 776.9, provides as follows: .
"Under the definitions quoted above, it is clear that the employees who are covered by the wage and hours provisions of the act as employees 'engaged in commerce' are employees doing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) 'among the several States or between any State and any place outside thereof.' Although this does not include employees engaged in activities which merely 'affect' such

interstate or foreign commerce, the courts have made it clear that coverage of the act based on engaging in commerce extends to every employee employed 'in the channels of' such commerce or in activities so closely related to such commerce, as a practical matter, that they should be considered a part of it. The courts have indicated that the words 'in commerce' should not be so limited by construction as to defeat the purpose of Congress, but should be interpreted in a manner consistent with their practical meaning and effect in the particular situation. *One practical question to be asked is whether, without the particular service, interstate or foreign commerce would be impeded,*

*impaired, or abated; others are whether the service contributes materially to the consummation of transactions in interstate or foreign commerce or makes it possible for exist-*

*ing instrumentalities of commerce to accomplish the movement of such commerce effectively and to free it from burdens and obstructions."* (Emphasis supplied.)