SNYDER NATIONAL BANK, Plaintiff-Appellee,

v.

WESTCHESTER FIRE INSURANCE COMPANY, Defendant-Appellant.

No. 28080.

United States Court of Appeals, Fifth Circuit.

April 30, 1970.

Rehearing Denied May 20, 1970.

James A. Williams, Dallas, Tex., for defendant-appellant.

Marshall Simmons, Thomas W. Luce, III, Dallas, Tex., W. James Rosser, Rosser & Carroll, Snyder, Tex., for plaintiff-appellee.

Before RIVES, GEWIN and INGRAHAM, Circuit Judges.

PER CURIAM:

Snyder National Bank, plaintiff-appellee, instituted this action on a Banker's Blanket Bond issued by the defendant-appellant, Westchester Fire Insurance Co., seeking to recover $29,334.43 which was the alleged amount of loss suffered by appellee as a result of a loan default. On cross motions for summary judgment, the district court found that appellee's loss was covered by Clause E of the Banker's Blanket Bond and rendered judgment for the appellee. Snyder National Bank v. Westchester Fire Insurance Company, 294 F.Supp. 500 (N.D. Tex.1968).

The parties entered into a stipulation of all material facts which are succinctly summarized by the court below:

"From the stipulated facts it appears that on August 19, 1965, Mrs. Virginia L. Garrison, acting in behalf of herself and her husband, made application to plaintiff for a 90-day loan of $20,000.00 to be used for purchasing a franchise and inventory for a "Cobbs Florida Cupboard Store". At the time of making the application Mrs. Garrison exhibited to plaintiff's officer a list of stocks on a form from the Merrill Trust Company, Bangor, Maine. Mrs. Garrison represented to plaintiff's officer that the listed stocks were no longer in trust, that $50,000.00 worth of the stocks had already been sold, and that the other $50,000.00 worth were held by Merrill Lynch, Pierce, Fenner & Smith, Inc. at its Miami Beach, Florida office for the purpose of sale for the Garrison account.

After due consideration of the value of the stocks, plaintiff agreed that it would make the loan upon the conditions that (1) the Garrisons instruct Merrill Lynch to proceed to sell the stocks within the 90-day term of the prospective loan and to forward the proceeds from the sale of the stocks to plaintiff for the purpose of repaying the loans and advances made by plaintiff to the Garrisons, and (2) that Merrill Lynch acknowledge to plaintiff receipt of such instructions and acknowledged to plaintiff the transfer, delivery and receipt of the stocks. Mrs. Garrison stated that she was agreeable to these conditions and the loan was approved by plaintiff's loan committee on the basis that the written advice from Merrill Lynch acknowledging receipt of the instructions was in plaintiff's files before any

sums of money were advanced on the loan.

On August 24, 1965, Mrs. Garrison presented to plaintiff a telegram which purportedly came from the Miami office of Merrill Lynch, Pierce, Fenner and Smith, Inc. It read:

"EST=PAUL GARRISON=1006 215 ST
    SNYDER TEX=

=LETTER ACKNOWLEDGED SECU-
    RITIES WHEN SOLD CHECK
    MADE PAYABLE TO PAUL GAR-
    RISON SENT TO SNYDER NA-
    TIONAL BANK SNYDER TEX-
    AS=

=MERRILL LYNCH PIERCE FEN-
    NER & SMITH INC=

MILTON J. SCHWARTZ 407 LINCOLN
    ROAD MIAMI BEACH, FLA."

Upon receipt of the telegram, the $20,000.00 loan was consummated. Later, and in reliance upon the telegram, plaintiff made a further loan to the Garrisons on October 19, 1965 in the sum of $7,000.00. Still another $7,000.00 loan was made on November 4, 1965, once again in reliance upon the telegram.

When by November 30, 1965, Plaintiff had received neither any proceeds from the sale of the stock from Merrill Lynch nor a satisfactory explanation from the Garrisons as to why plaintiff had not received any such proceeds, plaintiff made inquiry by telephone of the Miami Beach, Florida office of Merrill Lynch as to when the proceeds might be expected. Plaintiff was informed that Merrill Lynch did not have possession of the subject stock on August 24, 1965, or any time thereafter. Plaintiff was further informed by Merrill Lynch that the telegram was wholly false and that the name "Merrill Lynch Pierce Fenner and Smith Inc.", as shown on the telegram, was not authorized by Merrill Lynch to be transmitted. Based on this information, plaintiff applied funds on deposit with it to the credit of the Garrisons in the amount of $5,555.34 as a payment upon the note dated October

19, 1965. A balance of $1,144.66 remained. All subsequent attempts at collection from the Garrisons have proved futile, and there remains $28,444.66, plus interest, as provided by the notes still owing.

Plaintiff, in accordance with Section 3 of the Bond, notified defendant of all the above stated facts. After notification and within six months after the discovery by plaintiff of the loss, defendant denied that the loss was covered by the Bond."

294 F.Supp. at 501–502

■ The controversy between the parties centers around the construction of Insuring Clause E of the Banker's Blanket Bond and the sole issue presented to this court for review is whether the phrase "securities, documents or other written instruments", as appears in the clause, encompasses the telegram in question.

Insuring Clause E of the standard form bond reads, in pertinent part, as follows:

"THE LOSSES COVERED BY THIS BOND ARE AS FOLLOWS

\* \* \* \* \* \*

SECURITIES

(E) Any loss through the Insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any *securities, documents or other written instruments* which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity, \* \*" (emphasis supplied)

Appellant contends that the phrase "documents and other written instruments" is unambiguous and that the phrase should be given its plain and ordinary meaning, as read in a commercial and financial context. In support of its argument that the telegram in question does not come within the plain and ordinary meaning of the phrase, appellant relies heavily on the Massachusetts case of Rockland-Atlas National Bank of Boston v. Massachusetts Bonding & Ins. Co., 338 Mass. 730, 157 N.E. 2d 239 (1959). There, the Supreme Judicial Court of Massachusetts, in holding that a forged certified financial statement did not come within the coverage of Insuring Clause E, stated:

"The title 'Securities', although not controlling against a plain textual showing to the contrary, suggests that clause (E) is dealing with 'securities and writings something like securities' and it speaks against an intention to encompass all writings or all formal writings."

While we do not profess to express any view as to the inclusion of certified financial statements within the coverage provided by Insuring Clause E, we reject the narrow construction accorded that clause by the Massachusetts court.

The better and more reasoned approach was taken by the Eighth Circuit in American Ins. Co. v. First National Bank, 409 F.2d 1387 (8th Cir. 1969). There, the court, in holding that a shipper's memorandum was a "document or other written instrument" within Insuring Clause E, stated:

"[T]he conclusion that the words 'documents or other written instruments' extend coverage beyond securities is inescapable. To hold otherwise would in effect be holding that the words 'documents and other written instruments' were placed in the Clause (E) for no purpose at all. Documents and other instruments are not defined in the contract and hence the words must must be given their plain and ordinary meaning. The words are sufficiently broad to cover the shipper's memorandum." 409 F.2d at 1390.

Similarly, we are of the opinion that the words contained in Insuring Clause E are sufficiently broad to encompass the telegram in question and agree with the court below in its conclusion that:

The telegram in question is a writing which is commonly relied upon in business or commercial transactions as evidence of debt or property rights. The telegram can be construed as Merrill Lynch's acceptance, as agent, of the Garrison's offer to that firm to pay brokerage fees for their sale of stock and transmittal of the proceeds to Plaintiff Bank. It is well settled that a telegram may constitute such an acceptance. 294 F.Supp. at 503 (citations omitted).

Assuming, arguendo, that the language used in Insuring Clause E is ambiguous, a different result would not obtain, for it is a well established rule of Texas jurisprudence that,

If the words and expressions used in an insurance contract are susceptible of more than one meaning they must be construed favorably to the insured, * * * and the purpose of an insurance contract being to furnish an indemnity against loss, the contract should be construed in such way as to effectuate that purpose, rather than in a way which will defeat it. Central Surety and Insurance Corp. v. Anderson, 446 S.W.2d 897, 903 (Tex.Civ. App., Ft. Worth 1969) (citations omitted).

In a like manner, this court's opinion in First National Bank of Fort Walton Beach v. United States Fidelity and Guaranty Co., 416 F.2d 52 (5th Cir. 1969), holding "dividend and reinvestment advices" and "confirmation of dividends reinvested" to be "securities, documents, or other written instruments" within the purview of Clause E of the Banker's Blanket Bond, compels a similar result.

Affirmed.